[No. 4021.]
HOWARD v. THE PEOPLE.

1. CRIMINAL LAW—INFORMATIONS—KEEPING LEWD HOUSE OR PLACE.
Under section 1323, Mills' Ann. Stats., making it an offense to " maintain or keep a lewd house or place," an information that charges a defendant with keeping a " lewd house and place " does not charge two separate and distinct offenses, as the keeping of a house of the kind designated and the keeping of a place of the same character are but different ways or methods of violating the statute, and may each be charged separately, or both conjunctively as constituting but one offense when they refer to the same transaction by the same person and at the same time.

2. SAME—DISORDERLY HOUSE.
Under that part of section 1323, Mills' Ann. Stats., which makes it an offense to " keep a common, ill-governed and disorderly house to the encouragement of idleness, gaming, drinking, fornication or other misbehavior," a count in an information which charges the offense in the language of the statute down to and including the word " fornication," and then proceeds to add several other specific acts of disorderly conduct and misconduct of the same general character as those named in the statute does not invalidate the information as being based upon more than one section of the statute creating separate offenses, as the added language may be included in the expression of the statute "other misbehavior" if of the same general character as those specified, and if not, may be regarded as surplusage.

3. SAME.
An information which charges defendant with keeping a disorderly house and after enumerating the specific acts of misconduct named in the statute as encouraged by the keeping thereof proceeds to add thereto other specific acts not named in the statute, as fighting, disturbing the peace, etc., is not invalid as charging two offenses, one for keeping the kind of house designated and another for fighting, disturbing the peace, etc. A charge that defendant kept a disor-

derly house to the encouragement of fighting, etc., is not a charge
that defendant indulged in fighting, disturbing the peace, etc.

4. INFORMATIONS—KEEPING LEWD AND DISORDERLY HOUSES.

An information for keeping a lewd or disorderly house under the stat-
ute need not specify any particular acts of lewdness or disorderly
conduct complained of, but it is sufficient if the offense is charged
in the language of the statute.

5. SAME—PRACTICE—BILL OF PARTICULARS.

In a prosecution for keeping a lewd and disorderly house under the
statute, it was not error for the court to refuse to require the district
attorney to furnish defendant a bill of particulars.

6. PRACTICE IN CRIMINAL CASES—JURIES—WAIVER.

If at the trial of a criminal case defendant's counsel knew that the in-
formation and affidavit on which it was based were given to the
jury and taken to their room along with the instructions, and failed
at the time to object thereto, it is too late to raise the objection on
review or motion for new trial.

7. KEEPING LEWD AND DISORDERLY HOUSE—EVIDENCE—PRACTICE.

In a prosecution for keeping a lewd and disorderly house the general
reputation of the defendant and of the house and of the men and
women who resort to the house is admissible, and evidence of for-
mer convictions of defendant for previous offenses of the same
general character is competent to show defendant's reputation.

8. SAME.

In a prosecution for keeping a lewd and disorderly house evidence that a
petition signed by a number of citizens of the community where de-
fendant lived had been presented to the city council, in which de-
fendant was referred to as a lewd woman, was not admissible to
show defendant's general reputation.

9. SAME.

In a prosecution for keeping a disorderly house it was error to admit the
evidence of a witness that he had heard another man say he drank a
glass of beer in the house, as such evidence is hearsay and is not
competent evidence to show the reputation of the house.

10. SAME.

In a prosecution for keeping a lewd and disorderly house where the in-
formation alleged the offense as continuing between certain dates,
the prosecution was not confined to the period between the first and
last date mentioned in the information but might prove the offense
as committed at any time before the filing of the information and
within the statute of limitations.

*Error to the County Court of Mesa County.*

THE information under which the conviction was had

charges in the first count that on or about the first of August,
1898, and each and every day thereafter till November 10,
the defendant knowingly and unlawfully maintained and
kept a lewd house and place for the practice of fornication;
and in the second count, containing the same allegation as to
time, that defendant knowingly and unlawfully kept a com-
mon, ill-governed and disorderly house to the encouragement
of idleness, gaming, drinking, fornication, open lewdness, the
solicitation by prostitutes therefrom, fighting, the willful dis-
turbance of the peace and quiet of the neighborhood, loud
and unusual noises, threatening and traducing.

. Mr. HENRY W. ROSS and Mr. S. N. WHEELER, for plain-
tiff in error.

Mr. DAVID M. CAMPBELL, attorney general, Mr. CALVIN
E. REED and Mr. DAN B. CAREY, for the people.

CHIEF JUSTICE CAMPBELL delivered the opinion of the
court.

A large number of errors have been assigned and argued.
The transcript of the record is prepared without reference to
chronological order of the proceedings below. Both the rec-
ord and the abstract are confusing, and it has been a labori-
ous task to obtain a satisfactory understanding of the ques-
tions sought to be raised.

The attorney general in his brief states that there is no
affirmative showing in the record as certified here that all of
the evidence heard at the trial is contained in the bill of ex-
ceptions, or that all of the instructions given by the court
are thus preserved. In the reply brief this statement is not
controverted; but the record, as a whole, shows a reasonable
compliance with our practice in these particulars. The cer-
tificate by the stenographer of the court, it is true, does not
take the place of the certificate of the trial judge, but by
necessary implication, the correctness of the stenographer's

certificate in this record appears from other recitals made by the judge.

We make the foregoing reference, however, that we may call to the attention of the profession the slovenly manner in which records are sometimes prepared. To examine them with a view to do justice to the litigants involves unnecessary labor for the court, which considerate members of the bar should perform for themselves. A remedy for such carelessness, or ignorance of our rules, is a summary dismissal, which will be used if the practice continues, but there are certain features in this case which cause us to relax strict adherence to wholesome practice.

1. It is said that in the first count an attempt was made to charge two entirely distinct and separate offenses, viz, knowingly and unlawfully maintaining a lewd house, and knowingly and unlawfully maintaining a place for the practice of fornication. Counsel either misapprehend or misstate the import of this count. Section 1323, Mills' Ann. Stats. (Gen. Stats. 1883, sec. 829), upon which it is based, reads, "If any person shall * * * maintain or keep a lewd house or place for the practice of fornication," etc. It might well be said that "house" and "place" are used as synonymous terms. But if they do not have in the statute the same meaning, then the keeping of a house of the kind designated and the keeping of a place of the same character are but different ways or methods of violating the statute; and being stated therein disjunctively, these acts, when they relate to the same transaction and are committed by the same person at the same time, and for either or both of which the punishment is the same, may be charged each separately, or both conjunctively, as constituting but one offense, without violating any rule of criminal pleading.

2. It is stated that the second count is based upon two distinct and separate sections of the statute, viz, sections 1323 and 1305, Mills' Ann. Stats. (Gen. Stats. 1883, secs. 829 and 821.) In this contention, also, plaintiff in error is clearly wrong. This count is based upon the concluding part of

section 1323 which provides a punishment "if any person * * * shall keep a common, ill-governed and disorderly house, to the encouragement of idleness, gaming, drinking, fornication or other misbehavior." The language of this count is in the precise terms of the statute down to and including the word "fornication," and then proceeds by the addition of the other language found therein.

For several reasons the insertion of this language may be upheld, and the count regarded as being based upon section 1323. The concluding portion may be included in the expression "other misbehavior" found in the statute, for the reason that the specific acts set forth may be regarded as of the same general character as those previously mentioned. If not of the same nature, they may be regarded as surplusage, and enough would be left in the count to constitute an offense.

The further point sought to be made that two distinct offenses are contained in this count, viz, (1) the keeping of the kind of a house designated, and (2) fighting, disturbing the peace, etc., is palpably erroneous. The substantive part of the offense is that defendant kept a disorderly house to the encouragement of idleness, gaming, fighting, etc., and not that she kept a house of that kind and also indulged in drinking, disturbing the peace, etc. There is but one offense charged in either one of these counts, and the authorities cited by counsel for plaintiff in error to the proposition that two entirely separate and distinct offenses cannot be combined in one count because it would be thereby rendered double, are not applicable.

3. Another objection is that neither count of the information charges any specific offense against the defendant under the law. The argument in support of the contention is that the particular acts of lewdness or disorder complained of should have been set forth, so that defendant might know in advance for what offense she was placed on trial. This, also, is a misconception, or misstatement, of the real nature of the offense. Both counts are in the exact language of the

statute, and ordinarily that is a sufficient compliance as to definiteness and precision of statement. Manifestly, neither count is subject to the criticism, for in the first the defendant is charged with unlawfully maintaining and keeping a lewd house at a certain time and a certain place, and in the second count with keeping a disorderly house to the encouragement of idleness, gaming, drinking, etc., and it is not essential that the particular acts of idleness, gaming or drinking should be set out in the information, because the charge is that the disorderly house was kept to the encouragement of those things, and not that the defendant was guilty of the things themselves which the keeping of the house encouraged. *Leary v. State*, 39 Ind. 544; *State v. Hayward*, 83 Mo. 299; *U. S. v. Cruikshank et al.*, 92 U. S. 542.

4. The court refused to order the district attorney, at the request of the defendant, to furnish her with a bill of particulars. As a general proposition, it rests in the sound discretion of the trial court to order, or refuse, a bill of particulars; and except in the case of gross abuse of discretion, the ruling of the court below will not be disturbed. Wharton's Crim. Pl. & Pr. (9th ed.) §§ 157, 705.

But it follows from our holding that the allegations of the information were sufficiently specific and definite, that the ruling denying a bill of particulars was also right. We might affirm this particular ruling of the trial court upon the ground that the record discloses that the application came at so late a time that, for such reason alone, the court might properly have refused to grant it.

5. At the conclusion of the trial the court gave to the bailiff to be taken to the jury room along with the instructions the information and the affidavit of the city marshal upon which the information was based, and it seems (at least, it is claimed to have been shown by affidavits produced by counsel in support of the motion for a new trial) that this information, and especially the accompanying affidavit, were read by the jury, and that they mainly relied upon their contents in rendering their verdict of guilty. Without passing

upon the main question sought to be raised, it is sufficient
for the purpose of this opinion merely to say that the defend-
ant is not in a position to be heard upon it.  She was repre-
sented at the trial by two attorneys, one of whom only makes
an affidavit respecting what occurred in regard to the send-
ing of this affidavit to the jury, and even he does not swear
that he did not at the time know of the action of the court,
but only that he was not aware at the time he filed his mo-
tion for a new trial that this affidavit was " used and read by
the jury in its deliberations."  There is no affidavit by, or
claim in his behalf made that, the other attorney for the de-
fendant, who was present at the time, did not then know
that the affidavit was sent to the jury.  In other words, for
aught that appears, both counsel knew of this action of the
court at the time it was done, and neither interposed any
objection.  We do not say in this case that counsel permitted
this to be done for the purpose of taking advantage of it in
case the verdict was against their client, but we do say that
courts will not tolerate the practice which would allow coun-
sel to stand quietly by, without interposing any objection,
and see the court do an improper act that might result to the
injury of their client, and then seek to take advantage of the
error in case of an adverse verdict.  *State v. Nichols*, 29 Minn.
357.

6. Many errors have been assigned and argued to the rul-
ings of the trial court upon the admission and rejection of
testimony and to the instructions.  These will not be noticed
in detail, as, for lack of proper objections, and for failure of
plaintiff in error to comply with our rules of practice, she is
not in a position as to some of them to ask for a review.
But our refusal, in this matter, is to be taken neither as an
approval or disapproval of such assignments.

We are, however, compelled to reverse the judgment.  We
are free to say that we have endeavored to affirm it, but in
several particulars the trial court so palpably violated well
established principles of criminal law, which are the property
of every defendant accused of crime, irrespective of the na-

ture of the offense charged, that we cannot approve of its action without disregarding previous well considered decisions of this and other courts.

We do not set aside the verdict upon the ground so strenuously urged that the evidence is not sufficient to uphold it; for the jury was the proper tribunal to determine that question, and there was sufficient legal evidence to sustain the finding. But to that verdict there contributed erroneous rulings of the trial court which make it necessary to overthrow it. The evidence is largely, if not altogether, circumstantial in character, as in the nature of things in cases of this kind it must be. It was proper to introduce competent evidence as to the reputation of the plaintiff in error, herself, since she was an inmate of the house, and also the general reputation of the house itself. Likewise was it proper to introduce legitimate testimony as to the reputation of the men and women, if any, who resorted to the house. Evidence of former convictions in the police magistrate's court of the defendant for previous offenses of the same general character as that included in this information was proper, if for no other reason than that it tended to show her reputation in the community where she lived in the very particular which was involved in this charge.

But the admission of evidence that a petition signed by a number of citizens of the community where defendant lived had at one time been presented to the city council, in which she was referred to as a lewd woman, was erroneous. It is an improper method of establishing general reputation. So, also, was there error in admitting the testimony of the witness Keller that he had heard another person say that the latter had drunk a glass of beer in defendant's house. It was not only hearsay, but was not the proper way in which to establish the general reputation of the house as one in which drinking was carried on.

Other similiar errors in the admission of testimony might be enumerated, but the foregoing are sufficient to indicate

the objectionable character of the rulings attacked, and in the event of a new trial they should be avoided.

The errors assigned to these instructions given by the court of its own motion which plaintiff in error is in a position to press we do not consider tenable, and our attention has not been called to any substantial objection thereto. The instructions given by the court at the instance of the district attorney ought not to have been given at all; for some of them were not founded on any evidence in the case. In so far as they enunciate correct principles of law, under the facts, they had already been given by the court of its own motion; and in so far as they were a departure from, or addition thereto, they were erroneous.

Counsel for plaintiff in error have criticised the action of the trial court in admitting testimony within a period of eighteen months (the statutory period of limitation) prior to the time of the returning of the information which charged a continuing offense. They say that under the Massachusetts rule this was error, and that the evidence should have been confined to the period between the first and last date mentioned in the information. This rule has been adopted by the Texas court of appeals, but we concur in the opinion of Mr. Bishop, who, in his work on Criminal Procedure (2d ed.), § 402, declares that the rule is not based upon principle, and should not be followed. See, also, 1 Bishop on Crim. Proc. (2d ed.), § 388, and *State v. Nichols*, 58 N. H. 41.

From what has already been said, the trial court will not, in the event of a new trial, fall into the errors contained in this record, but we desire to say further that in its instructions the court did not observe the legal distinction between fornication and adultery; and while the instructions given as to the degree of evidence required may not be reversible error, yet the jury should have been given to understand more clearly that their conclusion must be upon the evidence beyond a reasonable doubt. Other instructions given may be subject to the criticism of incompleteness; but, taken as a

whole, we do not think they are subject to the many objections urged.

We are constrained to remark that the prejudicial errors committed in this case were due to the improper insistence upon the part of the district attorney. In their zeal to secure a conviction, prosecuting officers should not, as they sometimes do, offer incompetent evidence and contend for instructions which are of doubtful soundness, particularly where a jury may safely be trusted to do substantial justice under legitimate evidence and instructions which have stood the test of searching criticism in appellate tribunals.

Because of the errors pointed out, the judgment must be reversed and the cause remanded, and it is so ordered.

*Reversed.*