(No. 2713.)

## STATE v. ALSTON

### SYLLABUS BY THE COURT

(1) An indictment which charges a statutory crime in the language of the statute is usually sufficient. It is only where the terms of the statute are so general that a specification of detail is necessary in order to identify a given transaction that it becomes necessary for the indictment to specify beyond the language of the statute.                P. 381

(2) Under this rule an indictment charging the offense of permitting prostitution, lewdness, and assignation to be carried on and conducted is sufficient if drawn in the language of chapter 69, Laws 1921. It is unnecessary in such indictment to set forth the name or names of the person or persons permitted to so use such premises.                P. 381

3. Statements of admission of inmates of a house concerning their character are admissable if made in or about the house in which the appellant is charged with having unlawfully permitted prostitution, lewdness, or assignation to have been conducted.                P. 382

(4) Such statements are admissable to establish the character of such inmates, which, when established, may be considered by the jury as a circumstance tending to prove that such prostitution, lewdness, or assignation has actually occurred upon such premises.                P. 382

(5) Evidence that complaints were made to the sheriff's office concerning a house in which prostitution, lewdness, and assignation are charged to have been permitted, without detailing what was said by such complainants, is not objectionable as being hearsay.                P. 385

(6) Evidence reviewed, and held to warrant submitting the cause to the jury, and likewise sufficient to sustain the verdict.                P. 385

Appeal from District Court, Grant County; Ryan, Judge.

W. D. Alston, alias W. D. Austin, was convicted of permitting a building under his control to be used for

the purposes of prostitution, lewdness, and assignation, and he appeals.  Affirmed.

Alvin N. White and James Royall, both of Silver City, for appellant.

H. S. Bowman, Atty. Gen., and A. M. Edwards, Asst. Atty. Gen., for the State.

### OPINION OF THE COURT

BRATTON, J.   Appellant was found guilty of permitting a certain building situated in the town of Central, in Grant county, which was then under his control, to be used for the purposes of prostitution, lewdness, and assignation, in violation of chapter 69, Laws 1921, and sentenced to imprisonment in the county jail of that county for a term of four months, from which conviction and sentence he has perfected this appeal. The pertinent part of the second count of the indictment, upon which he was found guilty, is in the following language.

"Did then and there unlawfully permit a certain place, structure, and building, to wit, a house situate in the village of Central, in the county of Grant, in the state of New Mexico, upon certain premises, a more particular description of which is to be grand jurors aforesaid unknown, which said house is commonly known as and called 'the Green Front House,' to be used for the purpose of prostitution, lewdness, and assignation, the said W. D. Alston then and there well knowing that said house was then and there being used for the purpose of prostitution, lewdness, and assignation as aforesaid, the said house then and there being under the control of him, the said W. D. Alston."

From this it appears that the indictment is drawn in the language of paragraph (b) of section 1 of the act in queston. Said paragraph provides that it shall be unlawful "to occupy any place, structure, building or conveyance for the purpose of prostitution, lewdness, or assignation, or for any person to permit any place, structure, building, or conveyance owned by him or under his control to be used for the purpose of prostitution, lewdness, or assignaton, with knowledge or reas-

onable cause to know that the same is, or is to be, used for such purpose.'' Appellant challenged the sufficiency of the indictment by demurrer, in which he urged that it was defective in that it did not set forth the name or names of the person or persons whom he permitted to so use said premises. This the trial court overruled, the correctness of which is the first question presented for our consideration.

[**1, 2**] The offense charged is a statutory one, and the general rule is that to charge the same in the words or language of the statute is sufficient. It is only where the terms of the statute are so general as to require specification of detail in order to identify the transaction or offense in question that the indictment should go beyond the terms of the statute. State v. Alva, 18 N. M. 143, 134 Pac. 209; State v. Probert, 19 N. M. 16, 140 Pac. 1108; State v. Lazarovich, 27 N. M. 282, 200 Pac. 422. But, passing beyond this general rule, it is well established that an indictment charging this particular kind of crime is sufficient if it conforms to the language of the statute.

"Under statutes making it an offense for any person to allow, permit, or suffer a house owned or controlled by him to be used as a disorderly house, an indictment is usually sufficient which substantially follows the language of the statute." 18 C. J. 1259.

"It is not necessary to allege the character of the persons who frequent the house. Nor is it necessary that an indictment for keeping a disorderly house state the names of the frequenters or inmates of the house, even in the case of a bawdy house, or a gaming house. However, the rule is otherwise, under some statutes." 18 C. J. 1257.

Many cases might be cited sustaining this text. The following, we think, are sufficient: Howard v. People, 27 Colo. 396, 61 Pac. 595; State v. Beebe, 115 Iowa, 128, 88 N. W. 358; Woodward v. State, 174 Ind. 743, 93 N. E. 169; State v. Newman, 152 Mo. App. 144, 132 S. W. 735.

While Ray Grayson, sheriff of Grant county, was testifying as a witness for the state concerning a raid

which he and his deputies made of the premises in question, during which some men and two women were· arrested, he was asked the following questions, to which he made the following answers, respectively:

"Q. Do you know whether or not these women whom you placed under arrest at this time were prostitutes? A. Only from their own admissions.

"Q. What was the nature of these admissions? A. They said they were prostitutes, and had used the place for that purpose."

To which appellant objected upon the ground that such was hearsay evidence. With respect to the first question and answer, the objection is clearly untenable, in that nothing said by either the witness or the women was detailed, merely that some admission was made. Concerning the latter part of the last answer, viz. "and had used the place for that purpose," the objection is untenable in that such part of the answer was not in the least responsive, and could not have been anticipated by the question. Such was not called for, the scope of the question or interrogatory merely being what admissions they made with regard to their being prostitutes. No objection or motion being made to strike the same on account of not being responsive, the question is not reviewable.

[3, 4] Now, turning to the last question and so much of the answer as is responsve thereto, we have for determination whether or not statements made by inmates of a house in which the appellant is charged with having permitted prostitution, lewdness, and assignation to be carried on, concerning their bad character, are admissible when made in the defendant's absence. The record shows these questons were propounded and the answers thereto made on the premises at the time the officers went out there. While the courts are not in complete harmony on the subject, the general rule, supported by the weight of authority, is that acts and conduct of such persons, as well as their statements, which tend to prove their character,

if made in or upon the premises, are admissable. This evidence is admitted for the purpose of proving the character of such inmates so that the jury may know the kind and character of the people who inhabit or reside in such place, for the purpose of determining the character of the place, and whether or not prosttitution, lewdness, or assignation have been carried on there. The reason for the rule is obvious. If it be shown that the number of women of vile character are residing at a certain place, certainly this is a circumstance which the jury may consider in determining what their purpose was in so gathering and residing at such place. This would be a circumstance which could be considered along with all the other evidence to determine whether such prostitution, lewdness, and assignation actually occurred. It is not to prove the permission of the appellant, but to establish the fact that these things took place. His ownership or control of the premises and his permission to so use said premises would have to be otherwise proven. At the same time it was necessary to prove that these things were done and these acts committed, as their existence is a necessary element of the crime charged and the character of the inmates is a proper subject of proof as a circumstance tending to establish such fact.

"It is competent to show the conduct and conversations of the inmates and frequenters while in and about the house, and in some cases their conduct and conversations when away from the house may be shown, as bearing upon their character. But this rule does not let in hearsay, and evidence of conduct not in the vicinity of the house has been held prejudicial error. It has been held that evidence of such conduct is admissable whether defendant is present or not. But it has been held that evidence of such conversations where defendant was not present is admissable, unless the language used was of itself disorderly or was used in connection with acts which together with the language exhibited disorderly conduct." 18 C. J. 1269.

In the case of State v. Toombs, 79 Iowa 714, 45 N. W. 300, the appellant was charged with keeping a house of ill fame. The court there said:

"The defendant objected and excepted to certain testimony given in behalf of the state by a witness named W. W. Brewer. He was the driver of an omnibus, and testified that he had frequently taken women to the defendant's house, in daytime and at night. He was asked the following questions:    'Do you remember any conversation you had with one there last winter?'    The question was objected to unless the conversation with the woman was in the presence of the defendant.    The objection was overruled, and the witness answered as follows:    'There was one said if I saw any boys that wanted to come over to fetch them over.' That is all.'    It is claimed that this testimony was hearsay, and, not being in defendant's presence, he was not bound by it, and that any man might be ruined by designing women making such statements.    We think the evidence was competent.    It was a most material fact tending to sustain the indictment.    It showed that the woman making the statement was a prostitute, and that she entered the defendant's house and gave out an invitation or request to the witness to bring men to the house.    The character of the women who made the house a stopping place could be shown by their conversation not in the presence of the defendant."

And in Hickman v. State, 59 Tex. Cr. R. 88, 126 S. W. 1149, being a case where appellant was charged with keeping and maintaining a bawdy house, it is said :

"Nearly all of the questions raised on the appeal relate to evidence introduced by the state showing the character of the inmates, their conduct, and conversations had with them, showing invitations to have sexual intercourse, and offers by Susie Mead to procure for persons visiting the house women for this purpose.    This testimony was objected to by counsel for appellant on the ground that these matters occured in his absence, and that there was no evidence showing his knowledge of or concurrence in same, and that the acts and declarations of such parties were not binding on him.    This testimony was admissable on the ground that it was essential to show the character of the house and fact that it was resorted to for the purposes of sexual intercourse.    It might easily happen that a hundred such acts of prostitution might occur, and yet in no case it be shown by positive testimony that appellant was either present or had actual knowledge of such misconduct."

This rule is again announced in the Supreme Court of New Jersey in State v. Littman, 86 N. J. Law, 453, 92 Atl. 580, in the following language :

"It is next urged that the trial judge erred in the admission of evidence of the acts and conversations of persons in defendants' restaurant, not in the presence of the defen-

State v. Alston, 28 N. M. 379

dants. Not so. The testimony falls within the rule that acts of a disorderly character by persons in a house and what was said by them at the time as a part of those acts are admissable to establish the character of the house, * * * and not to charge the defendant with keeping it, before he can be convicted of that offense evidence sufficient to establish his connection, management, or control of such a place must be adduced. Binderagle v. State, 60 N. J. Law, 307, 37 Atl 619. But that is another matter." State v. Kelly, 76 N. J. Law, 576, 70 Atl. 342; State v. Koettgen, 88 N. J. Law, 51, 95 Atl. 747.

It being shown that the statement made by these women while in and occupying said house, flatly admitting that they were prostitutes, would be admissable because, if it be thereby shown that they were of that character, it would become relevant and could be considered by the jury for the purpose stated.

[5] The court permitted the sheriff and one or two of his deputies to testify that complaints had been made at the sheriff's office concerning this house. Neither witness stated or detailed anything that was said by any such complaints, but merely stated the physical fact that such complaints had been made. To this the appellant objected upon the ground that it was hearsy. This objection was not well taken. Nothing was repeated by said witnesses. They merely stated an independent fact. This evidence was not otherwise objected to. The detailment of a physical fact is not objectionable as being hearsay. State v. McKnight, 21 N. M. 14, 153 Pac. 76.

[6] It is lastly contended by appellant that the court erred in overruling his motion for a directed verdict, made at the time the state rested its case in chief, as well as when all the evidence had been submitted. By such motion he urged the insufficiency of the evidence to support the charge. We have carefully examined the entire record, and are unable to agree with appellant. One of the officers who aided in making the raid upon the premises and arresting the two women testified that within 30 minutes before such raid was made he saw one of these women and a

man occupying a bed within the house in question. Two or three of the officers who made such raid testified that one of the rooms was badly disordered; that in it they found some soiled linen, two or three bottles of disinfectant, as well as a wash basin with disinfectant water in it. Just before going into the house they heard a great deal of laughing by both men and women and heard one man say, "Let's have another drink." When they started into said house some men ran out of the back door thereof, and attempted to escape. The witness Harry H. Hickel, who resided near said premises, testified that while these two women were there he saw a great many men come and go to and from said house, sometimes two or three during the night, and sometimes as high as 10 or 12. In addition to this there is a great deal of testimony that this house had borne the general reputation for the past several years of being a house of prostitution, and had been once closed by the authorities on such account. Such closing, however, was before appellant's control over it began. The appellant is shown to have lived in the little village of Central for about one year prior to the date of the alleged offense. The sheriff of Grant county testified that the appellant told him he had rented said premises to these two women at a rental of $2 per day, or $60 per month; that they had paid him $30 on the said rent. It further appears that the appellant met one of these women in El Paso, and there entered into an agreement with her to rent said premises; that they at once took charge, and he was there once or twice afterwards, and before the officers raided the same. These facts and circumstances were sufficient to submit the case to the jury, and are likewise sufficient to sustain the verdict.

The judgment of the lower court is therefore affirmed; and it is so ordered.

PARKER, C. J., and BOTTS, J., concur.