### MURPHY v. MURPHY.

1. It has been settled upon sound considerations of public policy that the testimony of jurors is inadmissible in support of a motion to set aside a verdict on the ground of mistake, irregularity, or misconduct of the jury, or of some one or more of the panel.
2. The only exceptions to this rule are those in which the legislature has by express enactment authorized such attack upon the verdict by those rendering it.
3. From the mere fact that a grandson lived with, and made his home with, a grandfather before he became of age, and rendered him service, the law will not imply any contract to pay therefor.
4. The evidence of a contract to pay in such a case must be positive and direct. It must be such as will warrant a jury in finding that there was an express agreement to that effect.
5. Where instructions are given, stating positively that, when a grandson lives with and works for a grandfather, the relation of parent and child exists, it is error to charge the jury that the grandson can recover the value of such services upon an implied contract.

(Syllabus by the court. Argued Apr. 4, 1890. Opinion filed Nov. 24, 1890.)

Appeal from district court of Minnehaha county, Hon. JOHN E. CARLAND, Judge.

Action upon two promissory notes. Defendant pleads a counter claim. Judgment for defendant. Plaintiff appeals. Reversed.

The facts are stated in the opinion.

*Palmer* and *Rogde*, for appellant.

While it is a well established rule of law that "the affidavits of jurors will not be received to impugn their own verdict," yet when it appears by the affidavits of jurors that a misunderstanding existed between the court and the jury while in the jury box, and an error in the nature of a clerical error exists in the verdict, such affidavits should be received and the erroneous

verdict set aside. Capen v. Stoughton, 16 Gray 364; Heffron v. Gallupe, 55 Me. 563; Cutler v. Cutler, 43 Vt. 660; Newkirk v. State, 27 Ind. 1; Wright v. Telegraph Co., 20 Ia. 195; Perry v. Bailey, 12 Kan. 539; Jackson v. Dickinson, 15 Johnson 309.

Where it is concluded as a matter of law that one party stands *in loco parentis* to another, no recovery for wages can be had by the one under a contract implied against the party standing *in loco parentis.* Butler v. Slam, 50 Pa. St. 456; Swires v. Parsons, 5 Watts & Serg't 357; Lantz v. Frey, 14 Pa. St. 201; Murdock v. Murdock, 7 Cal. 511; Haggerty v. Mc-Canna, 25 N. J. Eq. 48; Ormsbee v. Rhads, 59 Vt. 505; Mulhern v. McDavitt, 16 Gray 404; Hull v. Finch, 29 Wis. 278; Wells v. Perkins, 43 Wis. 160.

*U. S. G. Cherry* for respondent.

Except where otherwise provided by statute, affidavits of jurors will not be received to set aside a verdict upon any ground, and where statutes do so provide, such affidavits can be used only in the instances therein particularly described. Polhemus v. Heiman, 50 Cal. 438; Turner v. Toulumne, 25 Cal. 398; People v. Gray, 61 Cal. 183; Hayne on New Trials, § 73; Newton v. Booth, 13 Vt. 320; Bennett v. Baker, 1 Humph. 399; Smith v. Eames, 3 Scam. 333; Clark v. Carter, 12 Ga. 500.

Where a relative more distant than a child lives with a person at his request, the presumption that he so lives as a member of his family, and not as a servant, is weaker than in the case of a child, and slight circumstances will be sufficient to raise a promise to pay him for his services. Whether the facts are sufficient to overcome the presumption that the services are gratuitous, is a question for the jury, and their conclusion will not be disturbed by the court. Woods Master and Servant, §§ 72, 73; Schouler Dom. Rel., § 274; Hart v. Hart, 41 Mo. 444; Thornton v. Grange, 66 Barb. 507; Mountain v. Fisher, 22 Wis. 90; Doane v. Doane, 46 Vt. 485; Freimuth v. Freimuth, 46 Cal. 43; Freeman v. Freeman, 65 Ill. 106; Smith v. Millegan, 43 Pa. St. 107; DeCamp v. Wilson, 31 N. J. Eq.

656; Guild v. Guild, 15 Pick. 129; Rogers v. Millard, 44 Ia. 466.

BENNETT, J.  The plaintiff and appellant brought his action on two promissory notes, aggregating, principle and interest, at the time of trial, $688.  The defendant makes no defense to the notes, but alleges, by way of counter-claim, that the plaintiff is indebted to him in the sum of $2,162, with interest from July 3, 1883, for work and services performed by defendent for plaintiff.  The plaintiff put in a general denial to the counter claim.  A trial was had upon the issues; a verdict rendered by the jury as follows:  "We, the jury in the above entitled-cause, find in favor of the defendant, Isaac Murphy, and assess his damages, over and above the amount claimed in the complaint, at the sum of six hundred and ninety dollars, damages.  C. C. METCALF, Foreman."  The plaintiff then filed a notice of intention to move the court to vacate and set aside the verdict, and grant a new trial, for the following reasons: (1) Misconduct of jury.  (2) Accident and surprise, which ordinary prudence could not have guarded against.  (3) Excessive damages, appearing to have been given under the influence of passion and prejudice.  (4) Insufficiency of the evidence to justify the verdict, and that it is against the law.  (5) Errors of law occurring at the trial, and excepted to by plaintiff. With the notice of intention to move for a new trial, the following affidavit of the jurors was filed,  "Territory of Dakota, county of Minnehaha—ss.:  H. C. Aldrich, Ira Winter, John Fortune, Henry Brandt, C. C. Metcalf, C. H. Wangsness, D. O. Crooks, James Riley, Allen Gould, Thos. Rickard William Hodgkinson. and James N. Corothers, each being first duly sworn, depose and say that they were members of the jury who rendered a verdict in the case of John Murphy v. Isaac A. Murphy, in the district court in and for said county and territory, on the twenty seventh day of November, 1888; that, in considering what verdict to render in said case, the jury agreed that a verdict of about two dollars ($2) in favor of the defendant would be proper and correct, but, through the mistake and misunderstanding of said jurors, a verdict of six hundred and ninety dollars ($690) in favor of the defendant was rendered.  The

deponents further say that said mistake and accident happened in this way: The plaintiff in the above-mentioned action claimed there was due him from the defendant, on two promissory notes, the sum of six hundred and twenty-five dollars, ($625,) with interest. The defendant set up a counter-claim of two thousand one hundred and sixty dollars, ($2,160,) for work and labor performed. After considering the evidence, said jurors agreed to offset the plaintiff's notes, and give the defendant about two dollars ($2) over and above said notes, making a sum total of six hundred and ninety dollars, ($690,) deducting therefrom the amount the plaintiff claimed, left a balance in favor of the defendant of about two dollars, ($2;) but in framing their verdict the said jurors disagreed, some claiming a verdict reading six hundred and ninety dollars ($690) in favor of the defendant would express their intention properly, and some two dollars, ($2.) After some discussion, the majority concluded the first would be correct, but instructed their foreman to ask the advice of the court on the matter before delivering the verdict. This the foreman attempted to do, but, as the deponents verily believe. he, through some misunderstanding, failed to obtain the information wanted, and the verdict remains as first written. The deponents further say that, believing the court had understood the foreman in his attempt to get the information required, and that the court had decided that the verdict as written conveyed the meaning intended, they answered 'Yes' to the question if it was their verdict. The deponents further say that the verdict rendered was not the one intended; that the result was brought about by accident, and through mistake; and, further, that the evidence given the case was insufficient to justify the verdict rendered. C. C. METCALF, JAS. E. RILEY, D. O. CROOKS, H. P. BRANDT, WM. HODGKINSON, THOS. RICKARD, ALLEN GOULD, H. C. ALDRICH, J. P. WINTER, C. H. WANGSNESS, JOHN FORTUNE, JAMES N. COROTHERS." A bill of exceptions was settled on the 27th day of March, 1889, being the evidence introduced, and exceptions taken during the trial, together with the notice of motion for new trial, and the affidavit of jurors, upon the

record of the court. At the regular April term, the motion for a new trial was brought on for hearing. The defendant moved that the foregoing affidavit be stricken from the files and disregarded, upon the ground that said affidavit was improper, incompetent, and inadmissible, and contrary to law. This motion was sustained, and the affidavit was stricken from the files. To the granting of this motion, plaintiff excepted. The motion for a new trial was heard, and was overruled and denied, to which order of the court plaintiff excepted. A judgment was then rendered in accordance with the verdict, and an appeal duly taken. A large number of assignments of error was filed, but, for the purpose of fully reviewing the case, these may be grouped under two heads: (1) The errors committed on the hearing of the motion for a new trial in denying the same, and granting the order striking the affidavit of the jurors from the files of the case. (2) The errors of law committed upon the trial in refusing to direct a verdict for plaintiff as requested upon the trial, and also in the law of the case as given to the jury by the court.

1. As to the first of these alleged errors, it has been settled upon sound considerations of public policy that the testimony of jurors is inadmissible in support of a motion to set aside a verdict on the ground of mistake, irregularity, or misconduct of the jury, or of some one or more of the panel. This rule is conceded by counsel for appellant, but he insists that in the present case the mistake which is proved by the testimony of the jurors is of a different character and nature from those from which the general rule emanated; that it is not one connected with the consultation of the jury, or the mode in which the verdict was arrived at or made up. No fact or circumstance is offered to be proved which occurred prior to the determination of the case by the jury, and their final agreement on the verdict which was to be rendered by them. But the evidence of the jurors is offered · only to show a mistake, in the nature of a clerical error, which happened after the deliberations of the jury had ceased, and they had actually agreed upon their verdict. The error consisted not in making up their verdict on

wrong principles, or on a mistake of the facts, but an omission to state correctly in writing the verdict to which they had honestly and fairly arrived; in other words, a case of a mere formal and clerical error, which, despite the general rule, the court ought to interfere to correct, in order to protect the rights of parties. This contention on the part of the appellant seems to be just and right, and highly salutary and reasonable, and we should be inclined to hold with him if it were not for the adjudications of a court of the highest standing and ability to the contrary, viz., the supreme court of California, the statutes of which state upon new trials are identical with our own. While we do not wish to be understood that the decisions of that court are conclusive upon us in such case, yet, when we are asked to make an exception to a general and unreversed rule, it will be safest, to say the least, to make these exceptions as few as possible, that the rule may not be obliterated in time by the numerous exceptions that may be made to govern special cases. The statutory grounds upon which the affidavit of jurors is permitted to be heard are: "Whenever any one or more of the jurors have been induced to assent to any general or special verdict, or to a finding on any question submitted to them by the court, by a resort to the determination of chance, such misconduct may be proved by the affidavit of any one of the jurors." Subdivision 2, § 5088, Comp. Laws. The above subdivision is a literal copy of the California statute upon that subject, and has been before the supreme court of that state several times. The facts in the case of Polhemus v. Heiman, 50 Cal. 438, are very similar to the one under consideration, and are as follows: The defendants on the trial admitted that they owed the plaintiff $578.75, but claimed, as due them on the counter claim, $932.48, thus making a balance in their favor of $353.73. The jury rendered a verdict in favor defendants for $660.16, which was $306.43 more than they claimed. The defendants remitted the surplus, and took judgment for the amount they claimed. The plaintiffs, on motion for a new trial, filed affidavits of the jurors that they rendered their ver-

dict with the understanding that the amount admitted to be due to the plaintiff would be deducted by the court from the amount found in the verdict, and that judgment would be rendered for the balance, viz., the sum of $81.41. The plaintiff appealed. In considering the case the court says: "In this state the affi-davits of jurymen cannot be received to defeat or impeach a verdict. The prohibition extends beyond cases of wilful mis-conduct on the part of jurors, and to every case in which the affidavits are attempted to be used as ground for setting aside a verdict because of a misunderstanding of its effect by some or all of the jurors who unite in its rendition. The only excep-tions to this rule are those in which the legislature has by ex-press enactment authorized such attack upon the verdict by those rendering it." See; also, Boyce v. Stage Co., 25 Cal. 474. The language of such an authority is entitled to and does receive great consideration from all judicial tribunals. If the conclusions we have come to are seemingly harsh, and may be unjust, so far as the plaintiff in this case is concerned, he could have been fully protected at the time the verdict was rendered. The verdict could have been scrutinized, and, from the circum-stances transpiring at the time of its delivery into court, the verdict could have been read to the jury, and it polled before discharged, and if any disagreed with it they could have been sent to their room to have returned a new verdict that wo uld have expressed their determination. Upon the first proposi-tion of appellant, we say the court committed no error.

2. Did the court err in refusing to direct a verdict for plaintiff as requested upon the trial, and also in the law of the case as given to the jury in the charge? From the evidence upon the trial, the court charged the jury as matter of law as follows: "There is a legal and moral obligation resting upon the parent to provide for, educate, and take care of his minor children until they arrive at the age of majority. That being so, the law imposes a correlative duty or entitles the parent to the benefit of the earnings of the child during his minority. Out of that existing state of things arises this presumption: That, where a child performs labor for its parents without an

express or implied agreement or contract that the child shall receive compensation therefor, it must be presumed that the services were gratuitous, and that the child cannot recover therefor. Of course this presumption grows less and less as the distance from the parent tree increases. But I am of the opinion, and so charge you, that the law is that a grandson working for a grandfather—that the same presumption exists there, in the absence of any proof of an express or implied agreement by the parties that the grandson shall receive wages for what he did. If you believe from all the evidence in this case that the defendant, Isaac Murphy, was taken into the family of the grandfather, and treated as one of the family, and that there was no contract either express or implied, and that neither party, the defendant or the plaintiff, understood or expected that there was any remuneration for the services rendered, then I say to you, gentlemen of the jury, if you find this state of facts to exist from all the evidence in the case, the defendant cannot recover in this action upon his counter claim. * * * You are to determine from all the evidence in the case, the facts testified to and surrounding this employment, its origination, and its termination, and determine from that evidence whether or not there was any contract express or implied between these parties which would authorize you to find that the services were to be paid for." This instruction declares that a parent is bound by law to provide for, educate, and take care of his minor children, and for this duty the law entitles the parent to the benefit of the earnings of the child during his minority; and the presumption is that, in the absence of an express or implied agreement that compensation shall be paid the child, the labor of the child is gratuitous. The court then, in the same instruction says: "I am of the opinion, and so charge you, that the law is that a grandson working for a grandfather—that the same presumption exists there, in the absence of any proof of an express or implied agreement by the parties that the grandson shall receive wages for what he did." Now, when the relation of parent and child is once established, or the same presumption arises, (and the

court announced to the jury that it did arise in the case at bar,)
either as a matter of law or of fact, can a recovery for wages
due or labor performed by the child for the parent be had on
an implied contract? If so, what is the necessity of making
the distinction between parent and child and other persons
where this relationship does not exist? Authorities are numer-
ous, and perhaps unconflicting, that express contracts made
between parent and child that the child shall be paid wages for
his labor during a portion or all of his minority will be enforced,
but it is for the child to establish such a contract before it is
entitled to recover; but we know of none where an implied con-
tract exists to that effect, unless there are facts or circum-
stances that indicate that it was clearly understood by the
parties that the services were to be paid for. In a leading case,
Pellage v. Pellage, 32 Wis. 141, Judge COLE says: "The only
other exception arising upon the record material to be considered
is the one taken to the refusal of the court to give the instructions
asked on the part of the defendant. These instructions are as
follows: 'If the jury find that the plaintiff except during short
intervals resided with his father, the defendant, had there his
board and clothing, and whatever in the way of money he
needed, the same as any other member of the family, and that
there was at no time any agreement what he was to receive as
compensation, or that he was to receive anything, then he can-
not recover. To entitle the plaintiff to recover, he must show
that he had an agreement with the defendant that he was to be
paid for his services, either at a fixed price or what they
should be worth.' Were not the instructions correct as propo-
sitions of law, and can it fairly be assumed that the defendant
was not prejudiced by the refusal of the court to give them?
The relation between these parties was that of father and son.
And where such a relation of kindred exists, it is well settled
that the law will imply no promise on the part of the father to
pay for the services of the son rendered by the latter after he
arrives at age. The presumption is that the child renders the
service gratuitously, or in consideration of having a home with
his father, of being furnished with board and clothing, and of

receiving care and attention in case of sickness.   And, there-
fore, in order to sustain an action for compensation for services
by a child against the father, this court has, in effect, held in
several cases that it must be shown by the evidence that a con-
tract existed between the parties to pay for such services, and
that such a contract, as to proof of its existence, is not to be
placed on the same grounds as "contract between strangers,
unaffected by any personal relation."   Fisher v. Fisher, 5 Wis.
472; Kaye v. Crawford, 22 Wis. 321; Hall v. Finch, 29 Wis.
278.   The same rule relating to children by blood appears to
apply equally to children by adoption, in Mountain v. Fisher,
22 Wis. 93.   See, also, Tyler v. Burrington, 39 Wis. 381.   In
the case of Titman v. Titman, 64 Pa. St. 484, the claim was for
services rendered by the plaintiff to her father when she was
18 years of age.   Judge SHARSWOOD said: "The first is
whether there was sufficient evidence to submit to the jury that
the relation between the plaintiff and decedent was not that of
father and daughter merely, but, superadded to that, the con-
tract relation of master and servant.   The presumpt on, *prima
facie*, was undoubtedly against the plaintiff's claim, and the
*onus* was therefore on her to show, by clear and distinct evi-
dence, a contract by her father to pay her wages."   To the
same effect is Barrett v. Barrett, 5 Or. 411.   It is not enough
that the party rendering the service expected to be paid, unless
the circumstances are such as show that the person for whom
they were rendered expected to pay for them, or ought to have
understood that such services would be a valid charge against
him.   Where the parties stand to each other in the relation of
members of the same family, as brothers, father and son, or
father and daughter, or if inmates of the same family, though
only remotely related, there is, *prima facie*, no implied prom-
ise to pay for labor done.   In this case there is no pretense
that there was an express contract proven, and the jury, under
the broad charge of the court, no doubt believed, and they had
god reason to so believe, that, when the labor was shown to
have been performed by the defendant, he could recover
upon a *quantum meruit* action without taking into consid-

eration the relationship he bore to the plaintiff. If the court had left the determination of this relationship to the jury, instead of having absolutely declared what it was, then, presumptively, we might have inferred that they did not stand as parent and child towards each other, and, if so, a *quantum meruit* action could have been maintained. For this error the case must be reversed, and remanded for a new trial. All the judges concurring.