7

## NYE & SCHNEIDER COMPANY V. SYLVESTER S. SNYDER.

FILED NOVEMBER 17, 1898. No. 8386.

1. **Trial: MISCONDUCT OF JUROR: REVIEW.** When there is misconduct on the part of a juror during the trial, attention should be called thereto at the first opportunity. If the defeated party knew thereof at the time the event occurred, he may not with such knowledge await the result of the trial, and when defeated be heard for the first time to complain in his motion for a new trial.

2. **Assignments of Error: RULINGS ON EVIDENCE.** An assignment of error directed to a group of rulings on a certain class of evidence raises only the question of the admissibility of such evidence as a whole. It presents no question peculiar to one ruling of the group.

3. **Sale of Cement: BREACH OF WARRANTY: ELEMENTS OF DAMAGE.** Cement was sold to the plaintiff for use in plastering a dwelling, and with a warranty of fitness for that purpose. *Held*, That expense incurred in cleaning floors marred by the falling of the

Nye & Schneider Co. v. Snyder.

plaster, expense of removing door and window casings prepara-
tory to replastering, expense of replastering and replacing cas-
ings, and loss of use of the house caused by these operations,
were elements of damage which should have been in the con-
templation of the parties at the time they made the contract as
the probable consequence of the breach of warranty.

4. ———: ———: ———. When the plaintiff found the plastering
was falling, he attempted to remedy the defect by patching it
where obviously defective. There was no proof that at the time
he did so the necessity of replastering was evident. *Held*, That
plaintiff might recover the reasonable cost of the patching.

5. **Instructions:** REPETITIONS. It is not error to refuse an instruction
the substance of which has been already given.

6. **Sale of Cement:** DEFENSE TO ACTION FOR BREACH OF WARRANTY.
In the case above stated, *held*, that unskillfulness in the manner
of applying the cement was no defense, if the manner employed
was one adopted from instructions furnished by the defendant
himself.

7. **Assignments of Error:** ASSESSMENT OF DAMAGES. Error in the as-
sessment of the amount of recovery is not presented, in an action
based on contract, by an assignment that the verdict is not sus-
tained by the evidence.

ERROR from the district court of Adams county. Tried
below before BEALL, J. *Affirmed.*

The facts are stated by the commissioner.

*Batty, Dungan & Burton,* for plaintiff in error:

Where the misconduct of a juror is of such a nature
that prejudice might have resulted from it, a presump-
tion of prejudice arises, which, unless rebutted by the
successful party, will require the granting of a new trial.
(2 Thompson, Trials 1981; *Johnson v. Root,* 2 Clif. [U. S.]
108; *Nesmith v. Clinton Fire Ins. Co.,* 8 Abb. Pr. [N. Y.]
141.)

It was the duty of the buyer to make all reasonable
exertions to render the injury as light as possible, after
he discovered the defects in the cement. (*Omaha Coal,
Coke & Lime Co. v. Fay,* 37 Neb. 68; *Uhlig v. Barnum,* 43
Neb. 595.)

Warranty is a question of intent and not of express

words. (*Kankakee Stone & Lime Co. v. Ugrow*, 36 Ill. App. 448; *Torkelson v. Jorgenson*, 28 Minn. 383; *Horner v. Parkhurst*, 17 Atl. Rep. [Md.] 1027; *White v. Stelloh*, 43 N. W. Rep. [Wis.] 99; *Richey v. Daemicke*, 86 Mich. 647; *Figge v. Hill*, 61 Ia. 430.)

A representation that a material for a certain purpose is as good as any other material in the market for the same purpose constitutes an express warranty. (*Aultman v. Weber*, 28 Ill. App. 91.)

Express warranties need not assume any particular form of expression; nor is any particular word necessary to indicate the intention to warrant. (Tiedeman, Sales sec. 193; *Warren v. Philadelphia Coal Co.*, 83 Pa. St. 440; *Henshaw v. Robins*, 9 Met. [Mass.] 83; *Callanan v. Brown*, 31 Ia. 333.)

An implied warranty can only arise where there is no express warranty; hence an express warranty will always exclude an implied warranty. (Tiedeman, Sales sec. 182; *McGraw v. Fletcher*, 35 Mich. 104; *Jackson v. Langston*, 61 Ga. 392; 10 Am. & Eng. Ency. Law p. 130; Story, Sales sec. 358.)

*M. A. Hartigan, contra.*

IRVINE, C.

Sylvester S. Snyder purchased from the Nye & Schneider Company certain material known as "Ivory Cement," wherewith he plastered a dwelling in course of erection for his own use. The result being unsatisfactory, he brought this action against the Nye & Schneider Company to recover damages. In one count of his petition he averred a warranty that the material was suitable, fit, and especially adapted to the plastering of said house, charged as a breach that the material was unfit and unsuitable and that the plastering soon fell from the ceilings and walls, and claimed certain consequential damages. Another count was for slander of title, alleging a malicious filing of a mechanic's lien for the price of the

cement. As the matter of the second count was not submitted to the jury it may be disregarded. On the issues tendered by the first count there was a verdict for the plaintiff for $400. The defendant brings the case to this court.

The first assignment of error is that the district court erred in refusing a new trial because of the misconduct of a juror. On the motion for a new trial it was asserted that during the trial, when a sample of plastering was submitted to the inspection of the jury, one juror refused to examine it, saying: "I have thumped plastering before, and that is not Snyder's house anyway." There is a conflict in the evidence as to what was actually said; further, if the remark was made as charged, it is questionable whether it permitted an inference of prejudice against the defendant. But aside from these considerations the assignment of error is not well taken. The evidence in support of the charge is in an affidavit made by defendant's manager at Hastings, who was present at the trial and who says that he heard the remark and observed the juror. Where there is misconduct of a juror during the trial, observed by or known to the party complaining, it must be called to the attention of the court at the first opportunity. A party will not be permitted, knowing of such misconduct, to remain silent, speculate upon a favorable verdict, and, if defeated, for the first time call the attention of the court to the misconduct by a motion for a new trial. (*Scott v. Waldeck*, 12 Neb. 5; *Peterson v. Skjelver*, 43 Neb. 663.)

Certain assignments of error relate to rulings admitting evidence. These assignments are very general, each relating to a group of rulings on a certain class of evidence. Each assignment presents, therefore, only the question of the general admissibility of evidence of the class embraced within the group. No single ruling is specified so as to permit inquiry into questions peculiar to that ruling. The evidence tended to show that the plastering began to fall off soon after plaintiff took up

his abode in the house. It marred the floors, and for a certain time deprived him of the use of at least a portion of the house. Plaintiff caused patches to be applied in places, but finally found the general character of the plastering to be such that it would be necessary to re-plaster the whole house. To do so the removal of the door and window cases and their resetting would be necessary. The evidence objected to related to the amount of damages arising from such facts. The rule in *Hadley v. Baxendale*, 9 Exch. [Eng.] 341, applies. Of course the ordinary rule of damages would give the plaintiff such sum as would place the house in the condition it would have been in had the warranty been true. To reach this sum the cost of replastering, of taking down the casings to permit replastering, and replacing them, and the cost of refinishing the floors, would be pertinent inquiries. But in such a case as this the specific rule above stated does not satisfy the more general rule that for a breach of contract the plaintiff may recover all damages natur-ally arising from the breach and all that may reasonably be supposed to have been in the contemplation of the parties as the probable consequence of a breach. The defendant knew the purpose for which the cement was bought, and must be held to have anticipated that, should it prove unfit, the plaintiff would be deprived of the occupancy of the house while it was being restored.

The case is not so clear as to the cost of patching the walls. If the house should have been entirely replas-tered, this patching was not an effort appropriate, as the event proved, to restore the damage. But the rule of avoidable consequences is a just rule for the defendant, and for his benefit, and is always applied with liberality to the plaintiff. The plaintiff would not be entitled to recover the cost of replastering if slight patching was all that the circumstances required. There is no proof that the patching was not a reasonable effort to lessen the damage in the light of circumstances at the time the effort was made. If so, then the plaintiff should not be

forbidden to recover for his reasonable efforts to lessen the injury, because facts occurring subsequently showed that such efforts were unavailing. The plaintiff in such cases does not always have to attempt at his own peril to lessen the injury.

Complaint is made with regard to the instructions. In the motion for a new trial the following are the pertinent assignments: "The court erred in refusing to give the instructions asked for by defendant marked A, B, C, D, E, F, G, 11, and 13." "The court erred in modifying the instructions asked for by defendant marked 3, 4, and 10." "The court erred in giving the instructions asked for by plaintiff marked 1, 2, 3, 4, 5, and 6." Under a familiar rule of practice none of these assignments is of service beyond requiring an inquiry whether the ruling of the court with regard to any one instruction in each group was correct.

Of the instructions refused it is sufficient to say that one or more of them had already in substance been given, and it was not error to refuse to repeat the same principle of law in varying phraseology.

Of the group of instructions which were modified we quote the third: "The court instructs the jury that if from the evidence you believe that the plaintiff relied upon the knowledge and skill of the contractor employed by plaintiff to prepare, use, and apply said ivory cement in question to the walls of plaintiff's residence, and that the injury complained of was caused by the unskillful use, preparation, and application of the cement in question by plaintiff's agents or employés, then you must find for the defendant." Modified by adding: "Unless you find they followed the instructions in preparing and putting on same." This modification was certainly correct. Defendant furnished with the cement printed instructions as to its use. If the defendant itself directed the manner of use, the fact that the manner designated was improper or unskillful would be no defense. There was evidence tending to show that the instructions had

not been in all respects followed, but this did not affect the correctness of the rule stated.

Of the instructions given the fourth, after reciting in terms the rule in *Hadley v. Baxendale,* proceeded: "If you find from the evidence in this action that the defendant knew the purpose for which this cement sold to the plaintiff was to be used, and warranted the same to be good cement, suitable for the purpose for which they knew it was to be used, and you further find from the evidence that the cement in question was not good cement, and was not suitable for the purpose to which the defendant knew it was to be put, then your verdict should be for plaintiff, and you will determine from the evidence what damage the plaintiff has sustained and allow him by your verdict such amount as the evidence shows the damage so sustained, bearing in mind that the plaintiff is entitled to recover in that event such damages as may be reasonably supposed to have been contemplated by the plaintiff and defendant at the time the cement in question was sold, as appears from the evidence and pleadings in the action." This instruction was somewhat turgid and possibly redundant, but it stated in correct terms the true general rule of damages, and further instructions made a more specific application thereof. In that way the defects, for which a somewhat similar instruction in *Omaha Coal Coke & Lime Co. v. Fay,* 37 Neb 68, was held bad, were supplied.

It is argued that the verdict is not sustained by the evidence. It is said on this point that there was no proof that the material was defective. It is unquestioned that the finished work was so bad as to be worse than worthless. Either the material or the workmanship must have been bad. *Res ipsa loquitur.* There was evidence tending to prove that the defect was in the workmanship, and the writer, speaking for himself alone, has no hesitation in saying that, so far as can be gathered from the record, that seems the more probable theory. But the proof on that point was not of such a character

that we can say that there was no room left for a reasonable difference of opinion, and we cannot disturb the verdict.

Finally it is argued that the verdict was excessive. The argument is advanced under the assignment of insufficiency of the evidence. The action being based on contract, this assignment is not proper for raising the question. (*Riverside Coal Co. v. Holmes*, 36 Neb. 858; *Beavers v. Missouri P. R. Co.*, 47 Neb. 761; *Wachsmuth v. Orient Ins. Co.*, 49 Neb. 590; *Hammond v. Edwards*, 56 Neb. 631.)

AFFIRMED.