## EWING et al. v. LUNN.

A double appeal is merely an irregularity which may be and is
waived by respondent by failure to serve notice of, and make a for-
mal motion to dismiss, the appeal.

Where no timely appeal was taken from an order granting de-
fendant's motion for a new trial, in an action in which the judg-
ment was for plaintiff's and where plaintiffs participated upon the
second trial, they waived any error in granting the new trial.

Where error in granting a new trial was waived, and, upon the
trial of the cause anew, judgment was rendered against the party in
whose favor the first trial resulted, an appeal from the judgment ren-
dered against him, and also from the order granting the new trial,
was not a double appeal, since the attempted appeal from the order
granting the new trial was surplusage, being a mere nullity.

An order granting a new trial was not reviewable upon appeal
from the judgment on the second trial as an "intermediate order,"
under Rev. Code Civ. Proc. § 463, providing that upon appeal from
a judgment the Supreme Court may review any intermediate order
or determination of the court which involves the merits and neces-
sarily affects the judgment appearing upon the record transmitted
from the circuit court.

In an action for commissions for procuring a purchaser for land,
pursuant to a contract between an alleged agent of the brokers and
the owner of the land, whether the person with whom the owner
contracted was an agent of the brokers for listing the land in ques-
tion **held,** under the evidence, a question for the jury.

In an action against a landowner for commissions for procuring
a person ready, willing, and able to purchase on the terms for which
the land had been listed, whether such a purchaser had been procured
**held,** under the evidence, a question for the jury.

Where, in an action for commissions for procuring a purchaser
of land, there was evidence that the brokers offered themselves as
purchasers of the land and presented to defendant a written con-
tract of sale to themselves, an instruction that the fact that the brok-
ers were ready to become purchasers of the land would not entitle

them to commissions for procuring a purchaser was not susceptible to the objection that there was no evidence upon which the instruction could be predicated.

In an action for commissions for procuring a purchaser of defendant's land, an instruction that the fact that the brokers were themselves ready to become purchasers would not entitle them to commissions was not prejudicial to defendant, if error, as not being authorized by the evidence, where there was no evidence to prove that they found a purchaser ready, able, and willing to take the property prior to the time limited in the contract of employment.

Where, in an action for commissions for procuring a purchaser of land, the jury found specially that a certain date was limited for the procuring of a purchaser, the finding, supported by the evidence, precluded plaintiff from recovering, where the purchaser alleged to have been found was not procured before the date limited by the contract.

Rev. Code Civ. Proc. § 271, provides that, in an action for the recovery of money only or specific real property, the jury in their decision may render a general or special verdict, and in all other cases the court may direct the jury to find a special verdict in writing upon all or any of the issues, and in all cases may instruct them, if they render a general verdict, to find upon particular questions of fact, and may direct a written finding therein. **Held**, that such section authorized the court, in an action for commissions in procuring a purchaser of land, to request the jury, in addition to their general verdict, to return a special finding as to whether the time for procuring a purchaser was limited by the contract of employment.

In an action for commissions for procuring a purchaser of land, a conversation between defendant and the broker several month after the contract was entered into between them, in which defendant stated that if he had had his own way he would have sold his land while he had a chance to, was irrelevant and immaterial.

Affidavits by members of a jury are inadmissible in support of a motion for a new trial, to show that one of the jurors was intoxicated during the trial.

A new trial will not be granted on the ground of intoxication of one of the jurors during the trial, where the juror's intoxication was known at the time to the counsel of the party seeking the new trial, since it was his duty to call the attention of the court to the condition of the juror and have him discharged or the case continued until he was in a condition to sit therein, and his failure to do so was a waiver of the misconduct.

Where a party moves for a new trial upon the ground of misconduct of a juror, he must aver and show affirmatively that both he and his counsel were ignorant of the misconduct charged until after the trial.

(Opinion filed, March 7, 1908.)

Appeal from Circuit Court, Hanson county. Hon. FRANK B. SMITH, Judge.

Action by S. D. Ewing and another against Christie Lunn, as executrix of the estate of Joseph Lunn, deceased, for commission for procuring a purchaser of certain land belonging to decedent. From an order vacating a verdict and judgment for plaintiffs and granting a new trial, and from a judgment in favor of defendant on a second trial, plaintiffs appeal. Affirmed.

*E. E. Wagner,* for appellants.

A verdict will not be set aside and a new trial granted for the alleged misconduct of the jury, where it appears that the jurors separated for innocent purposes and neither conversed or held communication with any one on the subject and could not have been influenced in any manner. Edward Thompson Co. v. Gunderson, 10 S. D. 42, 71 N. W. 764. Furthermore, an application for a new trial based on the ground of irregularity in the proceedings for the court or jury, must be made upon affidavits. Section 302, Code of Civil Procedure, Williams v. C. & N. W. Ry., 11 S. D., 463. Except under unusual circumstances, a new trial will not be granted on the ground of newly discovered evidence which goes only to discredit or impeach a witness, or which is merely cumulative. Scheffer v. Corson, 5 S. D. 232; Longley v. Daley, 1 S. D. 257; Gayes v. White, 2 S. D. 410. The circumstance that testimony has just been discovered when it is too late to introduce it, is so suspicious that the court requires the very strictest showing to be made of diligence, and all other facts necessary to give effect to the claim. Graham & Waterman on New Trials, Vol. 1, P. 473. The defendant complained of the instructions of the court, but he failed to preserve any exceptions prior to the entry of judgment, and therefore cannot be heard to urge that as error. Winn v. Sanborn, 10 S. D. 642. No exceptions were taken to the charge of the court and it must be treated as the law applicable to the case. Scheffer v. Corson, 5 S. D. 232. Instructions are erroneous which treat as an issue and submit to the jury, facts which are admitted by the pleadings. Blashford, Instructions to Juries, Section 36. Bland v. Thorp, 49 N. W. 1044.

If a fact is shown by undisputed testimony the court should treat it as established and refuse to instruct as to the necessity of proof of such fact and it is error to submit the same to the jury as if in dispute, because it would tend to confuse and mislead them. Blashford, supra, sec. 37. Though instructions may state correct legal propositions, if they were not applicable under the evidence and tended to mislead and confuse the jury a verdict under such circumstances is properly set aside. Welter v. Lestikow, 83 N. W. 9; Baird v. Gleckler, 11 S. D. 333.

*Zollman & Kelso* and *Preston & Hannett,* for respondent.

The order granting the new trial to defendants in this action was an appealable order, and the plaintiffs, if they so desired, could have taken their appeal to this court from the action of the lower court in granting defendant's motion for a new trial in said action. The order of the lower court denying plaintiff's motion for a new trial in this case after the entry of the second judgment, was an appealable order. Subd. 3 of sec. 462 Code of Civ. Procedure. These orders each being the subject, under our statute of a separate appeal cannot thus be united in one appeal. Hackett v. Gunderson, 1st S. D. 479; Ballow, Ad'x v. C. & N. W. Ry. Co., 10th N. W. 87; Sewing Machine Co. v. Guerney, 38 Wis. 533; Anderson v. Hultman, 12 S. D. 106. When a party participates in a new trial he may not thereafter question the correctness of the order granting it. Maxwell v. Kennedy, 7 N. W. 657; Gergahty v. Randall, 70 Pac. 767; Brown v. Tolles, 7 Cal. 398; Davis v. Davis, 8 Mo. 56; Samuel v. Morton, Id. 633; Grunberg v. Blumenthall, 66 How. Prac. 62; Spear v. Meschine, 24 S. E. 329. The affidavits of jurors cannot be received for the purpose of showing the misconduct of a juror, in the use of intoxicating liquors during the progress of the trial. State v. Andre, 14 S. D. 215; Gaines v. White, 1 S. D. 434; Edward Thompson Co. v. Gunderson, 10 S. D. 42; Murphy v. Murphy, 1 S. D. 316; State v. Kieffer, 90 N. W. 1117. Where a party moves for a new trial upon the ground of misconduct of the jury he must aver and show affirmatively that both he and his counsel were ignorant of the misconduct charged until after the trial. Grantz v. City of Deadwood, 20 S. D. 495, 107 N. W. 832; 12th Encl. of Pl. & Pr. 588. A

new trial will not be granted for the misconduct of a juror, not objected to at the time of the trial, unless the defeated party shows that he did not know of the misconduct before the case was submitted to the jury. Kenneberg v. Kenneberg, 79 N. W. 337; Nye & Schneider Co. v. Snyder, 77 N. W. 118; Peterson v. Skjelver, 62 N. W. 43; Wynn v. Ry. Co., 17 S. E. 649.

CORSON, J. This case was before us at a former term of this court, and an opinion was filed dismissing the appeal on the ground of duplicity. The opinion is reported in 21 S. D. 55, 109 N. W. 642. A petition for rehearing was filed, based upon the following grounds: "No notice of the motion to dismiss the appeal was served on appellant or his counsel, as required by statute and rule 23 of this court, and respondent waived her right, if any she had, to move for a dismissal of the appeal prior to the submission of the case under rule 21." The petition was granted, and the case is now before us on such rehearing.

An examination of the record discloses the fact that no notice of a motion to dismiss the appeal was served nor motion made as required by rule 23 of this court, and it further appears from the record that the case was submitted at the April term, 1906, under rule 21, neither party appearing by their attorneys when the case was called for argument. Assuming that there was a double appeal as claimed by the respondent, such double appeal constituted an irregularity only that might be waived by the respondent, and the same was waived by the failure of respondent to serve notice of and make a formal motion to dismiss the appeal. We are of the opinion, however, that there was no double appeal within the principle announced in the case of Hacket v. Gunderson, 1 S. D. 479, 47 N. W. 546, for the reason that it is disclosed by the record that a trial was had in the action, resulting in favor of the plaintiff; that a motion for a new trial was made and granted by the court, and thereupon a new trial was had resulting in a judgment in favor of the defendant. No appeal was taken from the order granting a new trial within 60 days allowed by law, and the plaintiffs participated in the second trial. The appellants, therefore, having failed to appeal from the order granting a new trial within the time prescribed by the statutes, their right to appeal from that

order was terminated before the appeal in this case was taken, and having participated in the second trial the respondents waived any error that may have been made by the trial court in granting a new trial. Maxwell v. Kennedy, 50 Wis. 645, 7 N. W. 657; Geraghty v. Randall, 18 Colo. App. 194, 70 Pac. 767; Brown v. Tolles, 7 Cal. 398; Davis v. Davis, 8 Mo. 56; Samuel v. Morton, 8 Mo. 633; Grunberg v. Blumenthal, 66 How. Prac. (N. Y.) 62; Speer v. Meschine, 46 S. C. 505, 24 S. E. 329. Appellant's attempted appeal, therefore, from the order granting a new trial was a nullity, and must be regarded as surplusage. Mead County Bank v. Decker, 19 S. D. 128, 102 N. W. 597.

The contention of appellants that the order granting the new trial is reviewable upon the appeal from the second judgment and order denying a new trial, as an intermediate order, is not tenable, as the order granting a new trial in no manner involved the merits or necessarily affected the judgment upon the second trial, and therefore does not come within the provisions of section 463 of the Revised Code of Civil Procedure, providing that "upon appeal from a judgment * * * the Supreme Court may review any intermediate order or determination of the court which involve the merits and necessarily affect the judgment appearing upon the record transmitted or returned from the circuit court. * * *" It is quite clear, therefore, that this court should not have dismissed the appeal, and the judgment of the court in so dismissing it must be vacated and set aside and the opinion disaffirmed.

This brings us to the merits of the case as presented by the record upon the judgment in favor of the defendant and order denying a new trial. The action was instituted by the Ewing & Parker Company, as copartners, to recover of Joseph Lunn the sum of $1,600 as a commission alleged to have been earned by them for finding a purchaser for the defendant's farm, consisting of a half section of land situated in Hanson county. The defendant in effect denied each and every allegation of appellant's complaint. The case was tried to a jury, and on the second trial a verdict was rendered in favor of the defendant. Subsequently to the trial the defendant Lunn died, and his widow was substituted as his executrix. It is claimed by the appellants who have been

substituted in place of the Ewing & Parker Company that one Krier was the agent of the said Ewing & Parker Company, and as such agent entered into a contract with the defendant Lunn to find a purchaser for his farm upon the express agreement that the Ewing & Parker Company was to have all they could obtain for the farm in excess of $37 per acre as their commission; that they found a purchaser ready, able, and willing to take the farm at the sum of $42 per acre, but that the said Lunn refused to carry out his agreement and declined to make the sale. It was claimed by Lunn that the contract he made was with Krier individually, and that he agreed with said Krier that in case he could find a purchaser for the said property on or before the 15th day of September, 1904, for the sum of $12,000—$6,000 in cash, and the balance secured by a mortgage—he would pay him therefor a commission of $150 out of the first money paid.

It is contended by the appellants that the land in question was listed by the appellants through their agent, Krier, and that the evidence of his agency was explicit and undisputed, and that, therefore, the court erred in refusing the following instruction requested by plaintiffs: "The undisputed evidence shows that Dominick Krier was the agent of Ewing & Parker Company on the 1st day of July, 1903, for the purpose of listing the land for sale." The court was clearly right in refusing to give this instruction, as the assumption on the part of the appellant that the evidence was undisputed is clearly not sustained by the record. Upon this question Joseph Lunn testified as follows: "He (Krier) asked if I wanted to sell my land, and I told him I had offered it for sale. He asked me how much I held it, at, and I told him $40 an acre. He said it would not sell for that; it wasn't worth $40 an acre. * * * He told me he had five or six quarters listed north and west of Farmer, and had offered his own two quarters for sale that day. I finally told him that if he would bring me down a buyer between that day and the 15th of September at $12,000—one-half cash and the balance on time—I would pay to him $150 cash as soon as the first papers were made out and the first money paid down. * * * In that conversation he said nothing to me about Ewing & Parker Land Company; I never heard the name mentioned at that time.

No one else was there. I had no other conversation with him that day. I had anothery conversation with him, I think about July 20th. In this conversation he told me he had gone in with Ewing & Parker Company, and thought he could get a purchaser better that way than he could alone, and he had listed his land with that firm; that is, his own two quarter sections. There was nothing said about his listing my land with Ewing & Parker. The next conversation was about the 20th of August. I was at Farmer and asked him if he found any buyer for my land yet, and he told me he hadn't. * * * I met a man on the 18th of September that told me his name was Parker; that is the first time I ever met any of the firm of Ewing & Parker Company." The evidence of Krier upon this subject was in conflict with that of Lunn, and it is impossible to reconcile his statements in regard to the contract with those of Lunn, and hence the evidence was not undisputed, as the principal question in the case was as to whether the contract was made by Lunn with Krier personally or as the agent of Ewing & Parker Company, and the court was clearly right in refusing to give the instructions requested by the appellants.

It is further contended by the appellants that the court erred in refusing to give to the jury the second instruction requested by the plaintiffs, which is as follows: "No. 2. The undisputed evidence shows that Ewing & Parker Company found a purchaser for the land who was able, willing, and ready to buy the land, and it is for you to say whether such purchaser was willing, ready, and able to purchase on the terms and for the price at which the defendant Lunn had listed the land with Ewing & Parker Company." The court was clearly right in denying this instruction. The evidence was not only disputed as to whether Ewing & Parker Company found a purchaser for the land, but there was evidence tending to prove that no such purchaser was found by Ewing & Parker Company to take the land upon the terms stipulated by Lunn in his contract with Krier as testified to by him, which was, as he says, to be $6,000. cash and $6,000 on time, and the time was limited to September 15, 1903. Exhibit A purports to be articles of agreement made the 18th of September, 1903, between Ewing & Parker Company and Charles G. Carlson for a sale of the land to him at

the price of $42 per acre in the manner following: "$2,000.00 to be paid on or before ten days; $5,440.00 to be paid March 1st, 1904, and about $6,000.00 by note drawing 6 per cent interest running five years with interest payable annually secured by an optional mortgage on said land payable one hundred dollars or any multiple thereof at any interest paying day, with interest at the rate of * * * per cent per annum, payable annually on the whole sum." Exhibit C purports to be a contract made the same day between —————————, party of the first part, and Ewing & Parker Company, signed by the Ewing & Parker Company but not by Lunn. The terms of this contract are substantially the same as those contained in the agreement between Carlson and the Ewing & Parker Company. As we have seen, Lunn, so far as his testimony discloses, entered into no such contract with Krier, but that the terms made by him were $6,000 cash and $6,000 on time, and it was therefore for the jury to say what the contract was between Lunn and Krier, and whether or not it was made by Krier individually or as the agent of the Ewing & Parker Company, and whether or not the contract drawn up by the Ewing & Parker Company was or was not in accord with the terms of the contract, and also whether or not Lunn's statement that the time was limited to the 15th of September in which the sale could be made was or was not true; and these were questions entirely for the jury. The court was clearly right, therefore, in submitting all of these questions to the jury for their determination, as the jury was the exclusive judge of the credibility of the witnesses and the weight to be given to their evidence.

The contention of the appellants that the questions submitted to the jury were upon undisputed facts is clearly untenable; as before stated, the claims of the respective parties in this action upon the evidence cannot be reconciled. The charge of the court is very lengthy, and it will not be necessary to set out the same in this opinion, but it must suffice to say that the charge of the court was eminently fair, and presented the case to the jury in as favorable a light for the appellants as the law would warrant it in doing.

It is further contended by the appellants that the court erred in its charge to the jury as follows: "Now, gentlemen, the fact

that Ewing & Parker Company were ready to become the pur-
chasers of the land, this would not entitle them to recover any
commission in this action. * * * So I say to you, no matter if the
appellants themselves or Ewing & Parker Company may have been
ready to buy the land, or may have offered themselves as pur-
chasers, that would not entitle them to recover"—for the reason
that (1) there is no evidence in the record that plaintiffs offered
themselves as purchasers; (2) it is not a correct statement of law.
The contention of appellants is untenable, as there was evidence
tending to prove that the Ewing & Parker Company did on the
19th day of September, 1903, offer themselves to the defendant
Lunn as purchasers of said land, and presented to him a written
contract for the sale of the land to themselves as purchasers, as
appears by Exhibit C, offered in evidence, which the defendant was
requested to sign by the Ewing & Parker Company, purporting
to be made directly to the Ewing & Parker Company as purchasers.
The court, therefore, committed no error in presenting that ques-
tion to the jury for its consideration, and there being evidence that
the Ewing & Parker Company, the assignors of appellants, did pre-
sent themselves as purchasers of the land in question, it was the
duty of the court to instruct the jury upon that question. But if
we are not correct in the view we have taken of this instruction,
the appellants were not prejudiced thereby, and would not be en-
titled to a reversal of the judgment, for the reason that there is
no evidence tending to prove that they found a purchaser ready,
able, and willing to take the property prior to September 15th,
which the jury found was the limitation fixed in the contract by
the defendant Lunn; and hence, under that finding, the appellants
had no claim upon the defendant for any commissions alleged to
have been earned in finding a purchaser after the time limited.

It is disclosed by the record that the jury not only returned
a general verdict, but also a special finding in answer to the fol-
lowing question: "Q. Did Mr. Lunn, in his contract with Krier,
make the limit of the contract to September 15, 1903? A. Yes."
That finding is clearly supported by the evidence, and is conclusive
upon the appellants, as it is not pretended by them that a purchaser
was found by the Ewing & Parker Company before the 15th day

of September, 1903. The contention by the appellants that the court was not justified in submitting this question to the jury is not tenable. By section 271 it is provided: "In an action for the recovery of mony only or specific real property the jury in their decision may render a general or special verdict. In all other cases the court may direct the jury to find a special verdict in writing upon all or any of the issues and in all cases may instruct them if they render a general verdict to find upon particular questions of fact and may direct a written finding thereon, * * *" It will thus be seen that the court was fully authorized to submit to the jury any question of fact that it may have deemed proper for them to pass upon, and to direct them to return a finding in writing thereon.

It is further contended by appellants that the court erred in striking out the answer to certain evidence given by Krier. It appears from the record that while Mr. Krier was a witness in behalf of the appellants he made the following statement: "I had a conversation with Mr. Lunn the latter part of June, 1904. He came from Wisconsin and rode with me. He said he was back to Wisconsin; that there was quite a land boom there. I said, 'Well, Mr. Lunn, you ought to have sold your land while you had a chance to.' Q. What did he say? A. He said, 'I know it, and if I had had my way about it I would.'" A motion was made by the defendant to strike out the answer as incompetent and immaterial, and not in any way referring to the matter in controversy, and not in any way affecting the particular contract alleged to have been made. The motion was granted and the plaintiffs excepted. It will be noticed that this conversation occurred several months subsequently to the making of the alleged contract between Krier and Lunn, and that it does not amount to an admission on the part of Lunn that the contract testified to by him as made with Krier was in any respect different from the contract as testified to by him. It neither tended to prove or disprove any of the issues involved in this action, and was therefore clearly irrelevant and immaterial, and was properly stricken out by the court.

One of the principal grounds relied upon on the motion for a new trial was the misconduct of the jury during the progress of

the trial, in that one of the jurors was intoxicated during the trial. The affidavits of two members of the jury which tried the case were offered to show the misconduct of the juror, but these affidavits were inadmissible for the reason that the affidavits of jurors cannot be received for the purpose of showing the misconduct of the jury during the progress of the trial except as provided in section 301 of the Revised Code of Civil Procedure. Gaines v. White, 1 S. D. 434, 47 N. W. 524; State v. Andre, 14 S. D. 215, 84 N. W. 783; Edward Thompson Company v. Gunderson, 10 S. D. 42, 71 N. W. 764; Murphy v. Murphy, 1 S. D. 316, 47 N. W. 142, 9 L. R. A. 820; State v. Kiefer, 16 S. D. 180, 91 N. W. 1117; Sanitary District of Chicago v. Edward F. Cullerton et al., 147 Ill. 385, 35 N. E. 723. In the latter case the Supreme Court of Illinois in discussing this question says: "In Graham & Waterman on New Trials (volume 3, p. 1429) it is said: 'It is admitted, notwithstanding adjudications to the contrary, that it is now well settled, both in England, and, with the exception of Tennessee, perhaps in every state, * * * that affidavits cannot be received, and we believe upon correct reasoning. If it were otherwise, but few verdicts would stand. It would open the widest door to endless litigation, fraud and perjury, and it is condemned by the clearest principles of justice and public policy.' In Baylies on New Trials (page 543) it is said: 'Affidavits of jurors will not be received, upon the motion for new trial, for the purpose of impeaching their verdict, by showing error or mistake in respect of the merits, or by showing their own misconduct or that of their fellows, or by showing that the misconduct of others affected their verdict.' See, also, Thompson & Merriam on Juries, 440; 1 Greenleaf on Evidence, 252. The grounds stated for the rejection of such affidavits have usually been, first, because they would tend to defeat the solemn act of the juror, under oath; second, because their admission would open the door to tamper with jurymen after their discharge; third it would furnish to dissatisfied and corrupt jurors the means of destroying the verdict to which they had assented. 3 Graham & Waterman on New Trials, 1128. It was said by Lord Ellenborough in Rex v. Wooler, 2 Stark. 111: 'The danger would be infinite if an affidavit could be received from the jurymen for

the purpose of setting aside a verdict.' And Lord Mansfield, in Owen v. Warburton, 1 New Rep. 326, said, that 'considering the arts which might be used if the contrary rule were to prevail, we think it necessary to exclude such evidence.' No good purpose would be served by citing or reviewing the English or American authorities declaring the general rule to be as settled in this state." Assuming, however, that there was sufficient evidence independently of the evidence of the two jurors to show that the juror was under the influence of intoxicating liquor during the trial, still that fact would not be a ground for a new trial in this case, for the reason that the affidavit of appellant's attorney shows that he knew the juror had been indulging in intoxicating liquors during the trial, and that he noticed from the general appearance of said juror that he was suffering from the use of an excessive quantity of alcoholic stimulants, and that he was affected thereby, and that he noticed this during the argument of the case to the jury.

The learned attorney for appellant in his affidavit states "that said juror was intoxicated and under the influence of intoxicating liquor when he, as plaintiff's attorney, made his closing argument to the jury, and while the court was delivering its charge to the jury, and when said case was submitted to the jury." It thus appears by the evidence of the counsel that during the taking of the evidence, the arguments of counsel, and while the court was delivering its charge to the jury, the juror was under the influence of intoxicating liquor. It was the duty of the attorney for the appellants, therefore, to call the attention of the court to the condition of the juror and have him discharged or the case continued until the juror was in a condition to sit in the case as such, and, failing to call the attention of the court to the facts which were within his knowledge at the time, appellants cannot now be heard to question the conduct of the juror, and are deemed to have waived such misconduct. Where a party moves for a new trial upon the ground of misconduct of the jury, the party must aver and show affirmatively that both he and his counsel were ignorant of the misconduct charged until after the trial. Grantz v. City of Deadwood, 20 S. D. 495, 107 N. W. 832; Wynn v. Ry. Company, 91 Ga. 344, 17 S. E. 649; Fifth Avenue Savings Bank v. Cooper, 19

Ind. App. 13, 48 N. E. 236; Peterson v. Skjelver, 43 Neb. 663, 62 N. W. 43; Kinneberg v. Kinneberg, 8 N. D. 311, 79 N. W. 337; Nye & Schneider Company v. Snyder, 56 Neb. 754, 77 N. W. 118; Selleck v. Turnpike Company, 13 Conn. 453; Orrok v. Insurance Company, 21 Pick. (Mass.) 457, 32 Am. Dec. 271; Henning v. State, 106 Ind. 386, 6 N. E. 803, 7 N. E. 4; Mergentheim v. State, 107 Ind. 567, 8 N. E. 568; Howard v. People, 27 Colo. 396, 61 Pac. 595; Richardson v. Foster, 73 Miss. 12, 18 South. 573; Grottkau v. State, 70 Wis. 462 36 N. W. 31; Pfeiffer v. City of Dubuque, 94 N. W. 492. In the latter case the learned Supreme Court of Iowa uses the following language: "Whatever may have been the right of the parties to object to the service of the juror in question, we think plaintiff is not in a position now to complain. Counsel's own affidavit reveals that he discovered the condition of the juror 'before the trial had been in progress two hours.' * * * Having failed to object to the juror when the ground therefor became apparent, we think he must be held to have waived his right to object to the verdict. His insistence that he 'was powerless to do anything only to allow the case to proceed,' is based upon a mistaken view of his rights. If a juror dies or is taken ill, or becomes insane, as soon as such fact develops, neither party is in duty bound to go any farther. It is his privilege to go on with 11 jurors, but he is under no obligation so to do, and may demand the impaneling of a new jury, or a continuance, if necessary. Code, § 3713. Having discovered the incompetence of a juror, a party should not be allowed to speculate upon a favorable result by withholding his objection until after a verdict is returned." Undoubtedly in the case at bar, had counsel for appellants called the attention of the court to the condition of the juror and requested a continuance of the cause until the juror was in a condition to sit in the case, such request would have been granted. But had the request been denied, an exception could have been taken and the ruling of the court in denying the application could have been properly reviewed by this court. The counsel, however, by proceeding with the case knowing the condition of the juror, is not now in a position to avail himself of the fact that the juror was incompetent to discharge his duties as such juror.

The judgment of the circuit court and order denying a new trial are affirmed.