Budd v. Mutchler, Appellant.

Argued November 11, 1929.

Before PORTER, P. J., TREXLER, KELLER, LINN, GAWTHROP, CUNNINGHAM and BALDRIGE, JJ.

*Mortimer C. Rhone,* and with him *A. R. Jackson,* for appellant.—Concrete blocks to be used in the erection of an ordinary garage are not within the provisions of Section 15 of the Sales Act: Meyer v. Packard Cleveland Motor Co., 106 Ohio St. 328; S. S. Angelo Toso, 265 Fed. 783.

*Clarence L. Peaslee,* for appellee.—The measure of damages is the actual injury sustained in consequence

of the defendant's breach of warranty: Morris v. Parhan, 4 Philadelphia 62; Smethurst v. Woolston, 5 W. & S. 106.

OPINION BY KELLER, J., February 28, 1930:

The evidence was sufficient to establish an implied warranty by the defendant, (See Sales Act of 1915, P. L. 543, Section 15 (1) ) that the concrete blocks which he sold the plaintiff were reasonably fit for the particular purpose for which they were required, viz., for the erection of a two-story building to be used as a garage. The verdict of the jury establishes that the building crumbled and fell because of the defective and disintegrating quality of the blocks, and not through the fault of the plaintiff. These were matters of fact for the decision of the jury.

The only real problem before us is the question of damages. The defendant contends that the measure of damages is limited by clause 7 of section 69 of the Sales Act to the difference between the value of the blocks at the time of delivery to the buyer and the value they would have had if they had answered to the warranty; but that measure is, by its very terms to be applied only "in the absence of special circumstances showing proximate damage of a greater amount." It is not applicable here, because the special circumstances, showing proximate damage of a greater amount, are present in the case. The rule to be applied therefore is that contained in clause 6 of section 69: "The measure of damages for breach of warranty is the loss directly and naturally resulting, in the ordinary course of events, from the breach of warranty." What were the losses directly and naturally resulting to the plaintiff from the collapse of his building due to the defective quality of defendant's blocks?

The blocks had crumbled so as to be utterly worthless. The plaintiff had admittedly paid defendant on account of them, in money or materials, $432. If en-

titled to recover, he was entitled to get that back. The rubbish and debris of the collapsed building had to be cleared away and the structure rebuilt. The expense of clearing away the rubbish and the cost of labor and materials used in reerecting the building, exclusive of the new concrete blocks, were also losses directly and naturally resulting, in the ordinary course of events, from the breach of warranty. Had the building not collapsed by reason of the defective quality of the blocks, the plaintiff would have been put to no expense in removing rubbish or in the second erection of the building. Those expenses were the direct and natural consequences of defendant's breach of warranty.

The subject is treated at some length in Williston on Sales, section 614, where it is said: "If consequential damages are natural consequences of a breach of warranty, the plaintiff is generally allowed to recover them;" and "Injury caused by using warranted goods in manufacturing other articles is recoverable unless the buyer was negligent or unreasonable in failing to discover the defects before using the goods." Thus one who sells barrels with a warranty is liable for the buyer's loss of the contents owing to defects in the barrels: Poland v. Miller, 95 Ind. 387; Tatro v. Brower, 118 Mich. 615, 77 N. W. 274. Where bricks for use in a wall were warranted to stay a uniform color and did not, the plaintiff was entitled to recover the expense of rebuilding the wall: Gascoigne v. Cary Brick Co., 217 Mass. 302, 104 N. E. 734. See also Bagley v. Cleveland Rolling Mill, 21 Fed. 159, where steel was bought for making vises and proved defective; Nye & Schneider Co. v. Snyder, 77 N. W. 118 (Neb.), where cement, warranted as specially adapted to the plastering of a wall, was purchased and proved unfit and unsuitable for the purpose, requiring the plaster to be removed and the walls replastered; Kellogg Bridge Co. v. Hamilton, 110 U. S. 108, where a subcontractor was employed to finish a bridge par-

tially built by the contractor and was allowed to recover for the damages sustained by reason of the unsubstantial character of the contractor's preliminary work.

The point is ruled in our own State in the case of Griffin et al. v. Metal Product Co., 264 Pa. 254, where the plaintiff purchased from the defendant a quantity of "high-speed" steel for use in making tools, which proved defective. The court below refused to allow the plaintiffs to show the expenses incurred by them in the endeavor to make tools from the steel, before they discovered the impossibility of so doing. The Supreme Court, in reversing, discussed the same contention advanced by this appellant as to the effect of section 69, clauses 6 and 7 of the Sales Act, and said, "It is difficult to understand what loss could more directly and naturally result, in the ordinary course of events, than the initial expense incurred in using the steel, when the defects in it were not otherwise discoverable. What those expenses were, and whether or not any of them were too remote, is not disclosed, because no inquiry into the matter was permitted. When the evidence is in, or is specifically offered, the court can determine the question of remoteness, which after all, is one of degree. That such expenses are allowable if not too remote, has often been decided both before and since the passage of the Sales Act: Williston on Sales, Sec. 614."

Plaintiff's evidence, which was not contradicted, showed that he had expended $25 in clearing up the debris of defendant's blocks; $70.74 for raising the broken floor and supplying new material to replace the broken boards; and $486.10 in an itemized account for labor and materials, exclusive of new concrete blocks, used in rebuilding the garage. The court below properly refused to admit in evidence the charges paid by plaintiff for testing the blocks after the collapse.

The evidence thus admitted, including a refund of plaintiff's payment of $432 on the blocks, (Sales Act, Sec. 69 (4) ), would have warranted a verdict for plaintiff of $1,013.44 with interest from January 1, 1927, to March 21, 1928. The verdict returned was for $760.

Defendant complains of the inadequacy of the judge's charge on the question of damages. It was inadequate in that respect, although neither party excepted to it on that account or made any reply to the judge's inquiry as to whether there was anything further they desired the court to say to the jury in his charge. See Mastel v. Walker, 246 Pa. 65; Fortney v. Breon, 245 Pa. 47; Com. v. Norris, 87 Pa. Superior Ct. 66.

He said: "If you find a verdict in favor of the plaintiff, then you will render a verdict for such an amount as you think under the testimony the plaintiff should recover." It would have been better had he specifically referred to the items of damage shown by the plaintiff, and stated that if the jury resolved the main issue of fact in favor of the plaintiff, they could render a verdict for such amount as, from the evidence, they found the plaintiff to have reasonably expended in clearing up the rubbish caused by the building's collapse and in reerecting the building (exclusive of the purchase of new blocks), plus the money paid by him to the defendant on account of the blocks; but the evidence was all before them, and all the evidence that the court admitted on the subject was relevant. In arriving at their verdict they were limited in the charge to the testimony thus received. The inadequacy of the charge on the subject of damages militated against the plaintiff rather than the defendant, and, in the light of the verdict, we see no harm done thereby to the defendant. That he is called upon to pay a verdict of

three hundred dollars less than the evidence warranted is no reason why he should have a new trial on the main issue of fact decided against him by the jury.

The assignments of error are overruled and the judgment is affirmed.