## COMEAU v. HURLEY et al.

In an action for the conversion of certain live stock, evidence
held to sustain a verdict for plaintiff notwithstanding evidence of a
voluntary transfer of the property to plaintiff by his father shortly
prior to the levy by defendant on execution against the father.

A verdict on conflicting evidence will not be disturbed on appeal.

Where plaintiff in an action for conversion had testified fully
on cross-examination as to the purchase and disposition of the live
stock in dispute, an objection to a question calling for further in-
formation about "the bunch" was properly sustained, since it was
ambiguous, and if it referred to stock other than that mentioned
in the pleadings and prior testimony it was irrelevant.

The trial court may allow on redirect examination testimony in
rebuttal which supports the examination in chief.

(Opinion filed, March 7, 1908.)

Appeal from Circuit Court, Potter County. Hon. LORING E.
GAFFY, Judge.

Action by Walter Comeau against Solon P. Hurley and an-
other. From a judgment for plaintiff, defendants appeal. Affirm-
ed.

*D. J. O'Keefe* and *Henderson & Fribourg,* for appellants. *S.
M. Howard, A. J. Brower* and *J. H. Bottum,* for respondent.

FULLER, J. The purpose of this action was to recover $1,-
000 damages for the wrongful conversion of certain cattle and
horses belonging to respondent, which were sold under execution
as the property of his father, M. A. Comeau, and the sufficiency of

the evidence to sustain the verdict of $521,80 in his favor is the first question discussed in the brief of counsel for appellants.

Relative to the vitally essential issue of ownership, the evidence offered in support of the complaint is voluminous and to the effect that respondent was under the age of 21 years at the time the cattle were purchased; that he and his brothers resided with their mother upon, and had exclusive management of, a government homestead owned by his father, whose business as a contractor and builder had kept him away from home almost continuously during the last 11 years, his visits being only at intervals of about three months and of but three or fours days' duration. The undisputed evidence shows that, with the knowledge and approval of his father, respondent has from childhood acted for himself in all business transactions, including contracts of employment for wages, the collection and investment of his earnings, together with the exchange of property without parental interference, and the facts and circumstances are such that his emancipation by both father and mother at the age of 12 years is unquestioned. Respondent testified that when 17 years of age, which was 6 years before the trial, he and his brothers decided to buy some young cattle, and, on account of their minority, had their father purchase on their account 34 steers and 25 heifers, nearly all yearlings, and, as neither of the boys were able to pay anything on the cattle they procured their father to execute a purchase-money mortgage for the entire price, but pursuant to the mutual agreement and understanding of all the parties he never paid any part of such indebtedness nor did anything in the way of taking care of the cattle. On the 3rd day of June, 1905, the 34 steers were marketed in Sioux City, and after the proceeds of the sale had been applied on the mortgage indebtedness the heifers were equitably divided, in the absence of their father who had nothing to do with the matter, and respondent thereafter branded such as he selected, and has always kept them at the home place, while an elder married brother took away those selected by himself, and no question is presented as to the identity of any of the cattle or horses seized and sold by appellants.

After minutely describing and stating the value of each of the cattle sold by appellants in satisfaction of the judgment against M.

A. Comeau, respondent further testified, without objection, as follows: "The W. C. bar brand on left side is my brand, but the brand was not on all of my cattle. This brand was not on any of the original cattle, but was on some of the offspring, and was not put on any of them before we divided them, but was put on two years ago last spring. The cattle were in the herd, and I had care of them when the sheriff came to take them. George took them there. I was busy and asked George to take them. I am working for myself, and have been since big enough to work; have drawn my own wages; bought horses, clothes, and fed myself, and bought these cattle and paid for them; and have also collected my wages when I worked out. There were four cows branded 'M. C.' on the left hip, and two two-year-olds, two yearlings, and one suckling calf branded 'W. C.' bar. They were branded with my brand. Of the horses the sheriff took— I owned an iron gray stallion, which was in my pasture when so taken. I know the market price of horses in this vicinity. This was worth $300.00. There was in my pasture when taken by the sheriff, a roan mare branded 'C.' bar 'L' on left hip, worth $100.00. I got that horse last December by trading. Of the other horses taken by the sheriff on June 3d there was a black mare, a sucking colt bald-faced, branded 'W. B.' bar on left hip, which I got from my brother Art; the colt was a mare worth $25.00, and the mare and colt together were worth $100.00. There was a sorrel mare branded 'cross-7' on left shoulder, which I got from my brother Willie, which was sold at sheriff's sale by Manfull, worth $50.00; a bay mare branded '17' which I got from Willie, worth $50.00; a sorrel mare branded 'cross 7' on left shoulder, worth $50.00, which I got from Willie, who got her from Mr. Brehl; and a bald-faced horse, without brand, worth $75.00." After putting up hay for the winter, and during the time his younger brother looked after the cattle, the witness stated that he had put up and sold ice as a means of obtaining money, and on cross-examination particularized concerning what he had received as wages from different employers both in this state and North Dakota.

Although the testimony of respondent and his numerous cor-

roborating witnesses is somewhat impaired by certain facts and circumstances tending to show that M. A. Comeau, the judgment debtor, owned the property and transferred the same to his son a short time prior to levy, the jury, in the exercise of its special province to weigh conflicting evidence, has reached a conclusion which cannot be disturbed. Independently of the case made by appellants, there is ample evidence to sustain the verdict, and no further inquiry relative thereto is permsisible on this appeal. Jeansch v. Lewis, 1 S. D. 609, 48 N. W. 128; Evert v. Kleimenhagen, 6 S. D. 221, 60 N. W. 851; Reid v. Kellogg, 8 S. D. 596, 67 N. W. 687; Richison v. Mead, 11 S. D. 639, 80 N. W. 131; Studebaker Bros. Man. Co. v. Zollars, 12 S. D. 296, 81 N. W. 292; Weiss v. Evans, 13 S. D. 185, 82 N. W. 388.

After respondent had testified on cross-examination without interrogation and in narrative form with reference to the purchase, sale, and disposition of the cattle and horses in dispute, the question "I want to know about the bunch, I am asking you about the bunch," was propounded to the witness by counsel for appellants, and the ruling of the court in sustaining an objection thereto is assigned as error. If counsel used the word "bunch" to designate cattle and horses other than those described in the complaint, and about which the witness had already testified at great length, the inquiry was irrelevant, and, in any event, so ambiguous that the objection thereto was properly entertained. To refute the direct and positive statement of respondent adduced on cross-examination to the effect that he never purchased from his father any of the property claimed in this action, and that it had all been acquired in the manner previously described on his direct examination and that of other witnesses, a bill of sale from M. A. Comeau to Walter Comeau covering such property and executed on the 24th day of May, 1905, was offered and received in evidence.

Proceeding further with the cross-examination, the witness was allowed to explain without objection that he took and filed the bill of sale from his father in order to make the county records show his title, so that he could mortgage the property to the Potter County Bank, and obtain money with which to pay $200 that he and his brothers had borrowed from their father, and in this he

is fully corroborated by Mr. J. R. Hughes of that bank, who required the bill of sale as a condition prerequisite to the loan.

Under the circumstances of the case, and especially in view of what the various witnesses had already stated without objection, it was not reversible error to permit him to testify, on redirect examination, that the agreement with his father was that the boys should cultivate and care for the farm, put up hay for their cattle, and have all they could make above such permanent improvements as might be necessary. To allow witnesses to give testimony in rebuttal which supports that received on their examination in chief is a practice so uniformly sanctioned as being within judicial discretion that the citation of supporting authority is deemed unnecessary.

From a careful examination of appellants' brief relative to questions of evidence and the instructions of the trial court, we are convinced that no prejudicial error of law occurred at the trial, and the conclusion is that the remaining points urged for reversal present nothing to justify their separate discussion.

Judgment appealed from is affirmed.