BROWN, Respondent, v. DRAEGER et al, Appellants.

(212 N. W. 869.)

(File No. 6337.   Opinion filed April 1, 1927.)

1. **Brokers—Fraud—Trust—Damages—Purchaser's Action For Broker's Profits by Falsely Representing Price of Lots Is for Breach of Trust, Making Actual Value of Property Immaterial (Rev. Code 1919, §§ 1984, 2001).**

   Where real estate broker in negotiating for purchase of lots for principal falsely represented price and secured profit to himself thereby, purchaser's action to recover such profit is not an action for breach of contract wherein recovery would be limited to damages under Rev. Code 1919, §§ 1984, 2001, but rather for breach of trust, so that actual value of property purchased would be immaterial in determining damages.

2. **Brokers—Agents—Purchaser Constituting Real Estate Firm Agent to Purchase Lots May Recover Difference Between Sum Paid and That Paid Owner By Agent.**

   Where purchaser employed a real estate firm to negotiate for purchase of lots, and agent fraudulently represented owner's lowest price therefor after obtaining a contract from the owner, purchaser is entitled to recover the difference between the sum paid and sum for which lots were purchased from owner.

3. **Brokers—Evidence Held to Sustain Verdict For Purchaser For Difference Between Amount Paid Real Estate Agents and Sum Paid to Owner by Them.**

   In action by purchaser against real estate agents to recover difference between sum paid and that for which agents purchased from owner after fraudulently representing that sum paid was owner's lowest price, evidence held sufficient to sustain verdict for plaintiff.

4. **Appeal and Error—Jury—Verdict Warranted By Conflicting Evidence Will Be Sustained.**

   Where there is legal evidence which fairly warrants verdict of jury, particularly in cases where evidence is conflicting, such verdict will be sustained.

5. **New Trial—Jury—Jurors' Affidavits of Statements of Certain Jurors as to Dealings With Defendant Cannot Be Received To Impeach Verdict (Rev. Code 1919, § 2555, Subd. 2).**

   Under Rev. Code 1919, § 2555, subd. 2, affidavits of jurors relative to statements by members of jury of dealings with defendants cannot be received to impeach verdict, nor considered in support of motion for new trial.

Note.—See, Headnote (1) and (2), American Key-Numbered Digest, Brokers, Key-No. 38(7), 9 C. J. Sec. 39; **(3)** Brokers, Key-No. 38(4), 9 C. J. Sec. 55; **(4)** Appeal and error, Key-No. 1002, 4 C. J. Secs. 2834, 2836; **(5)** New trial, Key-No. 143(2), 29 Cyc. 982, 988.

Appeal from Circuit Court, Brown County; Hon. Robert D. Gardner, Judge.

Action by A. H. Brown against C. A. Draeger and others, copartners doing business under the firm name of Draeger Land & Loan Company. From a judgment for plaintiff and an order denying new trial, defendants appeal. Affirmed.

*Corrigan & Walton,* of Aberdeen, for Appellants.

*Crofoot & Ryan* and *E. B. Harkin,* of Aberdeen, for Respondent.

SHERWOOD, J. For an understanding of this case, it is necessary to give a synopsis of the pleadings.

The complaint alleges, in substance: That respondent, plaintiff below, resided at Mobridge, 100 miles from Aberdeen, and was not familiar with the value of lots in the latter city. That Draeger Land Company was a partnership composed of C. A. Draeger, Floyd Yeager, and J. W. Daniels. That in April, 1920, respondent was engaged in running a hotel in Mobridge and was desirous of purchasing a tract of vacant ground in Aberdeen on which to erect and operate a hotel. Respondent called on appellant company in Aberdeen to ascertain if they had any property listed with them suitable for hotel purposes. While they were showing respondent different tracts they had for sale in the city, they passed certain vacant lots on South Main street which Draeger pointed out to respondent as lots belonging to one A. L. Ward, which lots were not then listed with defendant company, but might be for sale, stating to respondent they did not know what price Ward would want for the lots. That respondent suggested to appellant Draeger that they both go together and see the owner and ascertain at what price the property could be bought. That Draeger, for the fraudulent purpose of dissuading plaintiff from making inquiry of the owner as to the price of the lots, stated to respondent that Ward was interested in the operation of two of the leading hotels in Aberdeen and would probably think respondent desired to purchase said property for a hotel and probably would not sell the lots to respondent or would ask an excessive price therefor; and further stated he was well acquainted with Ward and would be able to buy the lots for respondent at a less price than respondent could buy them from Ward. That thereupon respondent employed

said Draeger as his agent to ascertain, for him, the lowest price at which such lots could be purchased, which Draeger undertook and agreed to do. That pursuant to that employment Draeger called on Ward, and Ward offered to sell the lots for $11,000 and allow Draeger a commission of 5 per cent for selling same. That after obtaining this price Draeger stated to respondent that Ward asked $15,000 for said lots, and that was the lowest price at which they could be bought, and that said lots were well worth that amount. That relying on the statements of Draeger that $15,000 was the lowest price for which said lots could be bought, he consented to purchase the lots from Ward at that price. That thereupon Draeger proceeded to draw a contract of sale of said lots between Draeger Land Company and respondent for $15,000; $1,000 payable on the execution of the contract, $4,000 on or before May 20, 1920; upon which payment Draeger Land Company agreed to give respondent a deed and take back a first mortgage for $10,000 on the property, $5,000 due November 20, 1920, and $5,000, May 20, 1921, interest at 7 per cent. That upon presentation of this contract to respondent for his signature he inquired of Drager why said contract was made with Draeger Land Company and not direct with Ward, the owner of the land. That Draeger then stated to respondent if the contract were made between respondent and Ward, Ward would probably refuse to sign the same, because he would know or suspect respondent was buying the property for the purpose of erecting a hotel thereon. That in order to arrange for the purchase it was necessary that the contract be made through Draeger Land Company instead of direct with the owner. That respondent paid Draeger Land Company $15,000 for said lots. That in all of said transactions he relied upon the honesty and integrity of defendants, particularly C. A. Draeger, in arranging for and carrying out the purchase of said lots from Ward, as agent of plaintiff, and at the lowest price for which said lots could be bought from Ward.

The complaint prays judgment against defendant for $4,000 and interest thereon at 7 per cent from May 20, 1920. The answer admits the copartnership and business of defendants and denies all other allegations of the complaint. The jury returned a verdict for plaintiff for $5,528.49, and defendants have appealed.

There are four assignments of error. The first relates to the exclusion of evidence. The second, to the instructions of the

court. · The third, to the insufficiency of the evidence to sustain the verdict. And the fourth, to alleged misconduct of the jury.

[1] Under the first assignment appellant sought to prove the value of the property bought by respondent, and by a suitable question and offer of proof presents that issue. It seems to be appellant's contention that this is an action for fraud and deceit in inducing respondent to enter into the contract for the purchase of these lots, that respondent was limited in his procedure to rescinding his contract and demanding the return of the money paid or to retain the property and sue for damages, and that he would be limited in his recovery to the damages set forth in sections 1984 and 2001, R. C. 1919. In this we think appellant is in error. This is not an ordinary action for damages for fraud and deceit. It is an action brought by a principal to recover from his agent the profit obtained by such agent through deceiving his principal as to the sum paid by him for property bought for the principal; in other words, in purchasing at a less price than that which he charged his principal. In this case it is alleged that appellant obtained $15,000 from his principal for the purchase of certain lots, but only paid out $11,000 of that sum for the lots, falsely representing to his principal that the lowest price for which the lots could be obtained was $15,000, and this action is brought to recover of the agent the $4,000 profit so obtained by him, with interest thereon at 7 per cent from the date the money was received. It is not an action for breach of contract, but rather for a breach of trust. The rule governing this class of actions is thus stated in 2 C. J. p. 697, § 356:

"As a general rule it is a breach of good faith and loyalty to his principal for an agent, while the agency exists, so to deal with the subject-matter thereof * * * as to make a profit out of it himself in excess of his lawful compensation; and if he does so he may be held as a trustee and may be compelled to account to his principal for all profits * * * acquired by him in such dealings, whether in performance or violation of his duties."

" * * * The application of this rule is not affected by the fact that there is a usage or custom to the contrary or that the agent is a gratuitous one.

"So an agency may be compelled to account for profits made by * * * purchasing at a less price than that which he charges

against the principal for the property unless the principal had full knowledge of such facts and consented thereto." 2 C. J. p. 698, § 357.

The actual value of the property was therefore immaterial, and the objection to the question, and offer of evidence, were both properly sustained.

[2] Under assignment No. 2, appellant asserts error in giving the following instruction to the jury:

"The court further instructs the jury that if you find from a preponderance of the evidence in this case that the plaintiff employed the defendants as his agent to negotiate with A. L. Ward for the purchase of the lots in question and to ascertain the lowest price at which said lots could be bought, and the defendants undertook to do so, and held themselves out to plaintiff as acting in his interest in such negotiations and by fraud dissuaded the plaintiff from himself negotiating directly with said Ward, and with fraud and deceit represented to plaintiff that the said Ward's lowest price therefor was in the sum of $15,000, when in fact the lowest price was $11,000, and that the plaintiff relied upon the said representations, and was justified under the circumstances and the evidence in this case in relying upon such representations, and in ignorance of the fact that defendants had obtained a contract from Ward for said lots for the sum of $11,000 and was thereby induced to part with the sum of $15,000 instead of the sum of $11,000, then and in that instance your verdict should be for the plaintiff in the sum of $4,000 and interest at 7 per cent from May 21, 1920."

Unless the verdict of the jury must be set aside under assignments 3 or 4, we think under the pleadings and evidence this instruction correctly stated the law applicable to this case.

Under assignment No. 3 appellant contends:

(a) There is no evidence in the record that the relation of principal and agent or other fiduciary relation existed between appellant and respondent.

(b) No evidence of false statements or representations made by appellants.

(c) No evidence respondent suffered injury.

[3] We have carefully read and considered all the evidence, some of which is very conflicting. We think it tends strongly to

show Draeger agreed to buy the lots for respondent at the lowest price Ward would accept. Having undertaken this trust from respondent, he was bound to carry it out in the utmost good faith. There was also evidence tending to show appellant prevented Brown, the buyer, from meeting or dealing direct with Ward, the seller, thus preventing Brown from knowing the price for which Ward was willing to sell, or that appellant was obtaining $4,000 more from respondent than he was paying Ward for the lots. This evidence, if believed by the jury, was sufficient to sustain the verdict. The jury have found by their verdict that appellant was the agent of respondent for the purchase of these lots and agreed to obtain them for respondent at Ward's lowest price, which it is conceded was $11,000, and that appellants actually obtained from respondent $4,000 more than they paid Ward for the land.

[4] It is settled law in this state that where there is legal evidence which fairly warrants the verdict of the jury, particularly in cases where the evidence is conflicting, such verdict will be sustained. Drew v. Lawrence, 37 S. D. 623, 159 N. W. 275; Comeau v. Hurley, 22 S. D. 79, 115 N. W. 521; Id., 24 S. D. 255, 123 N. W. 714.

[5] The only remaining assignment of error relates to alleged misconduct of the jury. Appellant presents the affidavits of six of the trial jurors, all of whom testify in substance that after the jury had been sworn and retired to their jury room, one W. J. Fritz, then a member of said jury, stated in the presence of the jury that he had had some experience with defendant Draeger in a land deal in which something was wrong, that Draeger afterward straightened the matter out satisfactorily to him, while two of the jurors swear that one Thomas C. Johnson, a member of the jury, also stated to and in the presence of the jury that he (Johnson) once occupied a building in which defendant Draeger was interested or was owner, and Draeger had fraudulently transferred the property to terminate the lease. All of affiants stated in their affidavits that they believed these statements were made with intent to prejudice the jury against appellants. We do not hesitate to say such statements, if made by jurors, while considering of their verdict, were highly improper and reprehensible, yet it is the contention of respondent that these affidavits cannot be received to impeach the verdict nor considered in support of a

motion for new trial, under subdivision 2, § 2555, R. C. 1919, which provides as follows:

"Misconduct of the jury; and whenever any one or more of the jurors have been induced to assent to any general or special verdict, or to a finding on any question submitted to them by the court, by a resort to the determination of chance, such misconduct may be proved by the affidavit of any one of the jurors."

Construing this section, this court said:

"It has been settled upon sound consideration of public policy that the testimony of jurors is inadmissible in support of a motion to set aside a verdict on the ground of mistake, irregularity, or misconduct of the jury, or of some one or more of the panel. * * * The only exceptions to this rule are those in which the Legislature has by express enactment authorized such attack upon the verdict by those rendering it." Territory v. King, 6 Dak. 131, 50 N. W. 623; Murphy v. Murphy, 1 S. D. 316, 47 N. W. 142, 9 L. R. A. 820; Gaines v. White, 1 S. D. 434; 47 N. W. 524; Thompson v. Gunderson, 10 S. D. 42, 71 N. W. 764; Ulrick v. Trust Co., 2 S. D. 285, 49 N. W. 1054; Long v. Collins, 12 S. D. 621, 82 N. W. 95; State v. Andre, 14 S. D. 215, 84 N. W. 783; State v. Kiefer, 16 S. D. 180, 91 N. W. 1117, 1 Ann. Cas. 268; Ewing v. Lunn, 22 S. D. 95, 115 N. W. 527.

This construction of the statute is in harmony with the rule laid down in 36 Cyc. p. 1122, § 1, which says:

"Where a statute enumerates the things upon which it is to operate, it is to be construed as excluding from its effect all those not expressly mentioned."

Appellant says in his brief:

"We recognize and fully appreciate the general rule which is sometimes stated without qualification or exception to the effect that the verdict of the jury cannot be impeached by testimony of the jurors. * * * This rule has been repeatedly announced by practically every court of last resort, including the Supreme Court of the United States."

In attempting to overturn this rule and overthrow this admittedly great weight of authority, appellants seek to make a distinction between that which essentially inheres in the verdict and an overt act open to the knowledge of all jurors, and quote extensively from Wigmore on Evidence in criticism of the ma-

jority rule. It should be noted in passing that in closing his discussion, and speaking of the majority rule, Wigmore says:

"The rule of Lord Mansfield seems now too firmly settled in most jurisdictions to be repudiated by judicial decision," Wigmore on Evidence, § 2354.

We are still satisfied, after such examination, that not only the great weight of authority, both in this country and in England, sustains the rule already adopted by this court, but we think the public policy announced by the statute and followed by this court is, in the main, conducive to justice and tends to give stability to the law.

Finding no error in the record, the judgment of the lower court and the order denying a new trial are affirmed.

GATES, POLLEY, and BURCH, JJ., concur.

CAMPBELL, P. J., not sitting.